DAWSON v. POSTAL TELEGRAPH-CABLE CO.

1. TELEGRAPHS AND TELEPHONES—HIGHWAYS AND STREETS—STAT-UTES—NEGLIGENCE.

   Telegraph company having authority for maintaining poles in public highway is not liable for damages resulting from road vehicle striking such pole unless it is on traveled portion of highway or so close thereto as to constitute an obstruction dangerous to anyone properly using highway and location of pole is proximate cause of collision (2 Comp. Laws 1929, § 11667).

2. SAME — HIGHWAYS AND STREETS — POLES — NEGLIGENCE — PROX-
    IMATE CAUSE—INTERVENING NEGLIGENCE.

 Act of telegraph company in placing pile of poles on highway a
  foot or two off main traveled portion, even if negligent, was
  not proximate cause of plaintiff's injury where company could
  not have foreseen collision resulting from negligent operation
  of truck forcing car in which plaintiff was riding to leave
  main traveled portion of road.

Appeal from Washtenaw; Sample (George W.),
J. Submitted October 17, 1933. (Docket No. 52,
Calendar No. 37,385.) Decided December 5, 1933.

Case by Pearl Dawson against Postal Telegraph-
Cable Company and Staebler Oil Company, Michi-
gan corporations, for personal injuries received al-
leged to have been caused by defendants' negligence.
Judgment for plaintiff as to both defendants. De-
fendant Postal Telegraph-Cable Company appeals.
Reversed as to appellant.

*Burke & Burke,* for plaintiff.

*Stivers & Hooper* (*Samuel C. Bowman,* of coun-
sel), for defendant Postal Telegraph-Cable Com-
pany.

BUTZEL, J. At about 1 p. m. on July 25, 1930,
Pearl Dawson, plaintiff, sustained severe injuries
while riding with some of her friends in an automo-
bile. The car was driven against a pile of telegraph
poles located parallel to and on the untraveled por-
tion of Depot street, which, at that point, adjoins a
railroad siding in Ann Arbor, Michigan. Depot
street is 66 feet wide but the main traveled portion
is only 34 feet in width. There is a space or strip
on the north side of the street, lying between the
traveled portion of the road and the railroad siding.

While the strip is city highway property, it is used by trucks and other vehicles for the purpose of unloading cargoes of freight from the cars switched to this particular siding. This strip to the north of the traveled part of the road is distinctly higher in point of elevation than that part of the road devoted to vehicular traffic. A photograph introduced in evidence, taken after a rain storm, shows water lying in the depression between the traveled and untraveled portions of the road. A series of upright telegraph poles were set in the ground at intervals near the south edge of this untraveled portion and nearly in line with the south edge of the pile of poles, which was 17 feet south of the south rail of the railroad siding and 14 feet south of the north boundary line of the road. The pile of poles was situated a foot or two to the north of the boundary of the main traveled part of the highway.

The driver of the car in which plaintiff was riding attempted to pass a truck of the Staebler Oil Company just as the truck began a left turn without any warning signal. In order to avoid a collision, the driver swerved to the left, around the truck and off the main highway, and crashed into the pile of telegraph poles lying in the untraveled portion of the road. Plaintiff brought suit against both the Staebler Oil Company and the Postal Telegraph-Cable Company, to whom the poles belonged. The record fails to show the purpose for which the poles were to be used and the length of time during which they were left lying at the site of the collision. The natural inference would be that the Postal Telegraph-Cable Company had deposited the poles at that point for use in its business. The case was tried without a jury and the trial judge rendered a judgment against both defendants. The telegraph com-

pany is the sole appellant and is hereinafter referred to as the defendant.

Under 2 Comp. Laws 1929, § 11667, the telegraph company may enter upon, construct, and maintain lines of telegraph through, along and upon any of the public roads and highways by the erection of necessary fixtures, including posts, etc., provided that such construction shall not incommode the public in its use of the roads. The statute confers upon the telegraph company authority to take all steps necessary in the construction of its lines that do not unreasonably affect the convenience of the public. See *Simonds* v. *Maine Telephone & Telegraph Co.*, 104 Me. 440 (72 Atl. 175, 28 L. R. A. [N. S.] 942). The following statement from 82 A. L. R. 395 is borne out by many decisions cited therein:

"It may be stated as a general proposition that a company lawfully maintaining poles in or near a public highway is not liable for the damage to person or property resulting from a road vehicle striking such a pole, unless it is erected on the traveled portion of the highway or in such close proximity thereto as to constitute an obstruction dangerous to anyone properly using the highway, and the location of the pole is the proximate cause of the collision."

Even were we to assume, however, that defendant lacked authority or was otherwise negligent in piling its poles in the untraveled portion of the road, we do not believe that plaintiff could recover against defendant. Such action, even if negligent, was not the proximate cause of the accident. Defendant could not have foreseen a collision of this kind resulting from an act of negligence by another party, forcing the car in which plaintiff was riding to leave the main portion of the road. In the case of *Wyatt* v. *Chesapeake & Potomac Telephone Co.*, 158 Va.

470 (163 S. E. 370, 82 A. L. R. 386), a somewhat similar accident occurred. The defendant therein lacked authority to locate its pole at the point of collision. The court held that a wrongdoer may be charged only with such consequences as a reasonably prudent person could foresee. Had a truck or any other object been standing alongside of the railroad siding at the same place, the accident still would have occurred. The location of the poles in the untraveled part of the road was not the proximate cause of the accident. It occurred at almost the brightest part of a summer day and the poles were piled so high as to be visible at a considerable distance.

Assuming without deciding that there was no contributory negligence on the part of the driver that could be imputed to plaintiff, defendant Staebler Oil Company is solely responsible for the accident. We believe the law is correctly stated in *Wyatt* v. *Chesapeake & Potomac Telephone Co., supra:*

"Of course it is true that but for the location of this pole there would have been no accident, but its unlawful location and the happening of the disaster leaves the question of causal connection still open. * * * Probable consequences are to be anticipated and not those which are merely possible. * * *

"This pole was in the road and was placed there without the necessary statutory permit, and so was negligently placed, but its unlicensed location did not proximately contribute to plaintiff's hurt, nor is this affected by her abstract right to use the entire highway."

To like effect are *Crawford* v. *Central Illinois Public Service Co.,* 235 Ill. App. 339; *Eberhardt* v. *Glasgow Mutual Telephone Ass'n,* 91 Kan. 763 (139 Pac. 416); *East Tennessee Telephone Co.* v. *Parsons,* 154 Ky. 801 (159 S. W. 584, 47 L. R. A. [N. S.] 1021);

*Stewart* v. *San Joaquin Light & Power Corp.,* 44 Cal. App. 202 (186 Pac. 160); *Peirce* v. *People's Telephone & Telegraph Co.,* 49 S. D. 22 (205 N. W. 713); *Gilbert* v. *Goralnik,* 238 Ill. App. 199, and *Anderson* v. *Schurke,* 121 Iowa, 340 (96 N. W. 862, 100 Am. St. Rep. 358).

Plaintiff relies upon the case of *O'Brien* v. *Union Telephone Co.,* 228 Mich. 156, in which we held the telephone company liable. Though the facts are somewhat similar to those in the instant case, there are vital points of difference. In that case, the paved highway was only 20 feet in width and was flanked on each side by a two-foot graded shoulder, level with the pavement and used for travel. Defendant had embedded a stake in one of the shoulders, about a foot from the pavement, to which was attached a guy wire designed to support a telephone pole. The accident occurred at night, at a time when the ground was covered with snow and ice. Plaintiff's sleigh, while trying to pass a vehicle ahead of him, was driven upon the unpaved shoulder and collided with the wire. We held the defendant liable. The declaration charged that the unpaved shoulders flanking the pavement were used for travel and that there was no light to warn pedestrians of the danger. These are not the facts or issues in the instant case, which is governed rather by our statement in *Bleil* v. *Railway Co.,* 98 Mich. 228, where we said:

"Ample room was left in the street for the passage of vehicles in the ordinary manner while under the control of their drivers. * * * The accident was not the natural and probable result of piling the rails in the street close to the curb, but of the fright of the horse. The proximate, and not the remote, cause controls in such cases in this State."

Judgment against the Postal Telegraph-Cable Company is reversed, with costs to appellant and without a new trial.

McDONALD, C. J., and WEADOCK, SHARPE, NORTH, FEAD, and WIEST, JJ., concurred. POTTER, J., did not sit.