DONALD SHAPIRO AND HAROLD SHAPIRO v. TOYOTA MOTOR COMPANY, LTD., TOYOTA MOTOR SALES, USA, INC., TOYOTA MOTOR DISTRIBUTORS, INC., NORTH CAROLINA TELEPHONE COMPANY, AND THE TOWN OF MATTHEWS

No. 7826SC118

(Filed 21 November 1978)

1. **Municipal Corporations § 14.2— state highway within city limits—no liability of town for dangerous conditions**

In the absence of any control over a state highway within its border, a municipality has no liability for injuries resulting from a dangerous condition of such street unless it created or increased such condition; therefore, the trial court properly granted summary judgment for defendant town in an action to recover damages for injuries sustained by plaintiff in an automobile accident which occurred on a state road within the city limits.

2. **Telecommunications § 3— telephone pole 12½ inches from curb—no interference with traffic—no negligence**

The placing and maintenance of a telephone pole by defendant telephone company in the Town of Matthews with the Town's permission in the arc of a curve in the right-of-way of a state road approximately twelve and one-half inches from the curb line was not negligence since the pole did not constitute a hazard to motorists using the portion of the highway designated and intended for vehicular travel in a proper manner.

APPEAL by plaintiffs from *Griffin, Judge.* Judgments entered 15 and 16 August 1977 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 26 October 1978.

On the night of 19 September 1973 plaintiff Donald Shapiro was a passenger in the left rear seat of a Toyota when it collided head on with a telephone pole beside a street in the Town of Matthews and Shapiro was injured. Shapiro and his father instituted the present action against the manufacturer and the distributor and the seller of the Toyota, against North Carolina Telephone Company (which erected and maintained the telephone pole), against Duke Power Company (which maintained a light on the telephone pole), and against the Town of Matthews. Plaintiffs accused the Telephone Company of failing to put markers or reflectors on the pole and of "negligent placement of said telephone pole on a dangerous curve, after knowledge of numerous prior accidents involving other vehicles and other poles located in virtually the same exact location." Plaintiffs' claim against Duke Power has been voluntarily dismissed. Plaintiffs accused the Town of negligently failing to erect appropriate signs to warn motorists of the dangerous curve. Both the Town and Telephone Company answered, denying negligence and asserting contributory negligence. Additionally, the Town alleged that it was entitled to governmental immunity and that the street where the accident occurred was maintained exclusively by the State.

It is undisputed that the Toyota entered Matthews traveling eastward on RPR 1009; that at about 2,310 feet inside the Town limits RPR 1009 curves to the left and immediately widens from two lanes to four lanes and changes into John Street; that N.C. Highway 51 intersects from the right in the middle of this curve and has a stop sign for its traffic; that a telephone pole was located in the curve, just beyond the intersection with Highway 51 and within the right-of-way of RPR 1009 and approximately twelve and one-half inches (12½ ") beyond the curb along the outside eastbound lane of RPR 1009; that the Toyota left the roadway and struck the pole and cut it in two; that there was a 35 m.p.h. speed limit sign at the Town limits and another at about 100 feet before the curve; and that there was a street light on the telephone pole but no reflectors or other warnings.

Interrogatories to the Telephone Company tended to show that it had erected and maintained the pole, that it knew of one

prior accident in 1972 involving a pole at this location, and that it replaced the pole after it was broken in this accident. When asked about governmental regulations, the Telephone Company produced a Rural Electrification Administration Telephone Engineering and Construction Manual which requires a clearance of only six inches (6″) between a curb and telephone pole, subject to local requirements if more stringent. In response to a similar interrogatory, Duke Power produced State Department of Transportation Policies and Procedures which provide that "[t]here is no single minimum dimension for setback of poles behind curbs; however, where there are curbed sections and no sidewalks, 6′ will be used as a design safety concept guide." Interrogatories to the Town revealed that it denied any responsibility for traffic signs at the scene of the accident, that it asked the State to study the interesection after this accident and that the State installed a "blinker light" in February 1974.

The Telephone Company moved for summary judgment; in support it submitted the 1951 ordinance under which the town authorized erection of telephone poles and an affidavit showing that this pole was located twelve and one-half inches (12½″) beyond the curb of RPR 1009. The Town moved for summary judgment on the basis of an affidavit from its clerk to the effect that RPR 1009 was part of the State highway system and was maintained by the State and that the Town had taken no part in erection of the telephone pole. In response plaintiffs filed three affidavits. One was from a photographer identifying the photographs of RPR 1009. An affidavit from engineer Rolf Roley, an expert in automobile accidents, tended to show that the intersection "was inherently dangerous and extremely hazardous in that it had been constructed as an angle," that there were inadequate warnings leading up to the intersection and inadequate lane markings in the intersection, that there was no reason for placing this telephone pole at its existing location, that if Roley "were called upon to place a pole at a point most likely to be involved with vehicular problems and impacts, I would select the exact spot where this pole is placed," and that the Toyota involved in this accident would have missed nearby trees and "would have done nothing more than run into the yard . . . if the pole had not been at that location." Finally plaintiffs presented, by way of an affidavit from one of their attorneys, Department of Motor

Vehicles records showing seven accidents at this intersection since 1967, four of which involved telephone poles at this same location, and a newspaper story referring to this intersection as "dead man's curve."

Judge Griffin allowed summary judgment in favor of the Telephone Company and the Town and plaintiffs have appealed.

*Helms, Mullis & Johnston, by N. K. Dickerson III, and Robert B. Cordle; and Karsman, Brooks, Doremus, by Stanley M. Karsman, for the plaintiffs.*

*Golding, Crews, Meekins, Gordon & Gray, by Marvin K. Gray and Harvey L. Cosper, Jr., and Robert L. Chapman, for defendant North Carolina Telephone Company.*

*Wade and Carmichael, by R. C. Carmichael, Jr., for the defendant Town of Matthews.*

MARTIN (Robert M.), Judge.

The question for decision is whether the trial court erred in entering summary judgment in favor of defendants Town of Matthews and North Carolina Telephone Company.

Rendition of summary judgment is, by the rule itself, conditioned upon a showing by the movant (1) that there is no genuine issue as to any material fact, and (2) that the moving party is entitled to a judgment as a matter of law. *Page v. Sloan*, 281 N.C. 697, 190 S.E. 2d 189 (1972); *Stoltz v. Hospital Authority, Inc.*, 38 N.C. App. 103, 247 S.E. 2d 280 (1978).

Issues of negligence are ordinarily not susceptible of summary adjudication either for or against claimant, but should be resolved by trial in the ordinary manner. It is only in exceptional negligence cases that summary judgment is appropriate. This is because the rule of the prudent man (or other applicable standard of care) must be applied, and ordinarily the jury should apply it under appropriate instructions from the court. *Caldwell v. Deese*, 288 N.C. 375, 218 S.E. 2d 379 (1975).

[1] While plaintiffs recognize that G.S. 136-66.1 and 160A-297(a) absolve the Town of responsibility for maintaining and improving RPR 1009, nevertheless, they contend the Town and Board of Transportation share a dual responsibility for erecting appropri-

ate highway signs pursuant to G.S. 136-30 and 31. Hence, they argue that the Town was negligent for failing to post adequate warning signs, for failing to light the intersection adequately, and for allowing the pole to be placed where it was. We disagree. Under the cited statutes together with G.S. 136-93, when a city street becomes a part of the State highway system, the Board of Transportation is responsibile for its maintenance thereafter which includes the control of all signs and structures within the right-of-way. Therefore, in the absence of any control over a state highway within its border, a municipality has no liability for injuries resulting from a dangerous condition of such street unless it created or increased such condition. That authority precedes responsibility, or that control is a prerequisite of liability, is a well recognized principle of law as well as of ethics. *Taylor v. Hertford*, 253 N.C. 541, 117 S.E. 2d 469 (1960). The court correctly allowed summary judgment in favor of defendant Town of Matthews.

[2] The action of the court in granting summary judgment in favor of defendant North Carolina Telephone Company presents the question as to whether the placing and maintenance of its telephone pole in the Town of Matthews with the Town's permission, in the arc of a curve in the right-of-way of RPR 1009 approximately twelve and one-half inches (12½") from the curb line could be held to be negligent of itself. If there was a total lack of negligence on movant's part, no issue is raised for the jury to consider.

G.S. 62-180 provides that operators of telephone lines have the right to construct and maintain lines along a public highway but may not obstruct or hinder unreasonably the usual travel on such highway.

In *Wood v. Carolina Telephone & Telegraph Co.*, 228 N.C. 605, 46 S.E. 2d 717 (1948), the minor plaintiff sought to recover damages for personal injury sustained when his arm was caught between the automobile he was driving and a telephone pole maintained by the defendant telephone company and located six inches (6") beyond the curb of the street. Plaintiff's automobile never crossed the curb or left the traveled portion of the street. Plaintiff asserted that defendant's maintenance of the pole in such proximity to the roadway constituted a hazard to persons traveling on the street.

In affirming the trial court's judgment sustaining defendant's demurrer, the Court, through Justice Barnhill, held that defendant's maintenance of the pole located six inches (6″) from the paved surface of the highway did not obstruct the free use of the vehicular lane of traffic or constitute a hazard to motorists using the highway in a proper manner.

Although the pole involved in the *Wood* case was located off the left side of the street, the Supreme Court stated the following principles which are clearly applicable in the case at bar:

> Surely all portions of a public way, from side to side and end to end, are for public use in the appropriate and proper method. (Citation omitted.) But this does not mean that a motorist is at liberty to drive his vehicle over and across the sidewalk or the grass plot between the sidewalk and street or to complain that objects there maintained obstruct his free use of the vehicular lane of travel.

> . . . The maintenance of an object in the public way in no event constitutes an act of negligence unless it renders the way unsafe for the purposes to which such portion of the street is devoted. (Citations omitted.)

> In almost every hamlet, town and city in the State the space between the sidewalk proper and the street is used for the location and maintenance of telephone and telegraph poles, traffic signs, fire hydrants, water meters, and similar structures. It is a matter of common knowledge that this space is so used. (Citation omitted.) In no sense do such structures constitute a hazard to or in any wise impede the free use of the vehicular lane of travel.

In effect, the Court held that the maintenance of a utility pole along a public highway does not constitute an act of negligence unless the pole constitutes a hazard to motorists using the portion of the highway designated and intended for vehicular travel in a *proper manner.*

The Toyota failed to negotiate the curve and crashed into the telephone pole located twelve and one-half inches (12½″) beyond the elevated curbing forming the southern edge of the outside eastbound lane of travel for vehicles approaching downtown Matthews from the west. Obviously, the pole would not have been

struck had the Toyota been operated in a proper manner. Thus, the maintenance of the pole did not constitute an act of negligence.

Viewing the evidence offered by plaintiffs in the light most favorable to them and drawing all inferences of fact against defendants, we conclude that it established a total lack of negligence on defendants part and entitled it to a judgment as a matter of law.

The order of the trial judge entering summary judgment in favor of North Carolina Telephone Company is affirmed; the order of the trial judge entering summary. judgment in favor of the Town of Matthews is affirmed.

Judges VAUGHN and MITCHELL concur.