## McMILLAN v STATE HIGHWAY COMMISSION

Docket No. 65038. Submitted June 29, 1983, at Detroit.—Decided
    November 22, 1983. Leave to appeal applied for.

Tamara McMillan, a minor, was injured when an automobile in
    which she was a passenger was struck by a hit-and-run vehicle,
    went out of control, and struck a utility pole owned by The
    Detroit Edison Company. Tamara and her mother, Patricia
    McMillan, brought an action for damages against the Michigan
    State Highway Commission, the Oakland County Road Commis-
    sion, the City of Royal Oak, and Detroit Edison. All the defen-
    dants except Detroit Edison were dismissed by summary judg-
    ments. The 52-4 District Court then granted Detroit Edison's
    motion for summary judgment, holding that Edison owed no
    duty to the plaintiffs because the pole was placed outside the
    traveled portion of the roadway and was not a menace to
    normal travel on the roadway. Plaintiffs appealed the judgment
    as to Detroit Edison to the Oakland Circuit Court, which
    affirmed, Hilda R. Gage, J. Plaintiffs appealed by leave granted.
    Held:

1. A utility company will not be found negligent for the
    erection or maintenance of a utility pole unless it is on the
    traveled portion of a highway or in such close proximity
    thereto as to constitute an obstruction dangerous to anyone
    properly using the highway. The pole in this case was located
    in a grassy median, approximately three feet from the paved
    portion of the roadway. There was no breach of duty in not
    designing the pole in anticipation that it would be struck by a
    vehicle.

2. The risk of placing a pole in proximity to a roadway is
    balanced by the utility of providing illumination of the road-
    way. While ordinarily the balancing of the risk is a jury
    question, in this case public policy militates in favor of uni-
    formity of application of tort liability. The trial court did not

REFERENCES FOR POINTS IN HEADNOTES

[1] 26 Am Jur 2d, Electricity, Gas, and Steam § 125.
[2] 57 Am Jur 2d, Negligence § 66 et seq.
[3] 57 Am Jur 2d, Negligence § 69.
[4] 57 Am Jur 2d, Negligence § 75.

err in granting summary judgment in favor of Detroit Edison based upon established precedent.

3. Defendant Edison did not breach any covenant to protect the public from harm associated with its light pole.

Affirmed.

HOOD, J., concurred in result only.

1. PUBLIC UTILITIES — NEGLIGENCE — UTILITY POLES.

A utility company will not be found negligent for the erection or maintenance of a utility pole struck by a vehicle unless the pole is on the traveled portion of a highway or in such close proximity thereto as to constitute an obstruction dangerous to anyone properly using the highway.

2. NEGLIGENCE — DUTY.

Duty in negligence cases is always the same: the actor must conform to the legal standard of reasonable conduct in the light of the apparent risk.

3. NEGLIGENCE — RISK OF HARM — UNREASONABLE RISK.

A person may engage in conduct involving a risk of harm to another unless the risk created by his conduct is unreasonable; the reasonableness of the risk depends upon whether its magnitude is outweighed by its utility.

4. NEGLIGENCE — RISK OF HARM — JURY QUESTION — PUBLIC POLICY.

The balancing of the magnitude of the risk of harm created by a person's acts with the utility of the actor's conduct is a matter for jury determination unless the court concludes that overriding considerations of public policy require that a particular view be adopted and applied in all cases.

*William L. Fisher,* for plaintiffs.

*Michael D. Gladstone,* for The Detroit Edison Company.

Before: CYNAR, P.J., and HOOD and R. J. JASON,* JJ.

PER CURIAM. Plaintiffs appeal by leave granted an order by the 52-4 District Court granting defendant Detroit Edison Company's motion for sum-

---

\* Circuit judge, sitting on the Court of Appeals by assignment.

mary judgment, GCR 1963, 117.2(1), and from a subsequent circuit court order affirming that judgment.

Facts are derived from the pleadings and from a settled statement of facts. On the wintry night of January 10, 1976, plaintiff Tamara McMillan was a passenger in an automobile traveling south on Woodward Avenue in the City of Royal Oak. At some point between the intersections of Woodward with 13 Mile and 14 Mile Roads, the vehicle was struck by a hit-and-run driver. The car went out of control, entered the median strip separating the north and southbound lanes of Woodward, and collided with a Detroit Edison utility pole.

In their complaint, plaintiffs alleged that the pole was within three feet of Woodward Avenue traffic and was not constructed of an energy-absorbing or breakaway material. Plaintiffs claimed that defendants owed a duty to maintain safe traffic conditions, including utility poles so placed to prevent collision with an automobile or designed to minimize injuries to a passenger in the event of a collision. Their complaint alleged that defendants had breached this duty wilfully, wantonly, carelessly, and negligently.

Alternatively, plaintiffs sued Detroit Edison on a theory of breach of covenant for failure to honor its obligations under a provision contained in a permit obtained by the utility when it installed the lighting pole.

As this litigation progressed, all named defendants other than Detroit Edison were dismissed from the suit by way of summary judgments. The action was also remanded to district court after the amount in controversy was determined to be less than the circuit court's jurisdictional limit. The district court granted summary judgment in

favor of Detroit Edison (defendant), ruling that defendant "owed no duty to plaintiffs in regard to the placement or maintenance of the utility pole in question since the utility pole was placed in such a manner as to be wholly outside the traveled portion of the highway and, as such, not a menace to the normal travel on said highway".

On appeal the circuit court judge reached a similar conclusion on the question of defendant's duty, and further ruled that plaintiffs' breach of covenant theory was meritless.

In dismissing plaintiffs' claim against defendant for negligently positioning and constructing its pole, both lower courts relied on two Supreme Court cases, *Dawson v Postal Telegraph-Cable Co,* 265 Mich 139; 251 NW 352 (1933), and *Cramer v Detroit Edison Co,* 296 Mich 662; 296 NW 831 (1941). In *Dawson,* the plaintiff's car was driven into a pile of telegraph poles located parallel to and on the untraveled portion of Depot Street in Ann Arbor. The poles had been piled "a foot or two to the north of the boundary of the main traveled part of the highway", and the plaintiff ran into them when her car had to swerve to avoid a collision with a truck that began a left turn without signaling. The Supreme Court noted that the telegraph company was entitled by statute to "enter upon, construct, and maintain lines of telegraph through, along and upon any of the public roads and highways by the erection of necessary fixtures, including posts, etc., provided that such construction shall not incommode the public in its use of the roads". *Dawson, supra,* p 142.

In determining whether the telegraph company had incommoded the public, the Supreme Court cited the following general proposition from 82 ALR 395:

"It may be stated as a general proposition that a company lawfully maintaining poles in or near a public highway is not liable for the damage to person or property resulting from a road vehicle striking such a pole, unless it is erected on the traveled portion of the highway or in such close proximity thereto as to constitute an obstruction dangerous to anyone properly using the highway, and the location of the pole is the proximate cause of the collision." *Dawson, supra,* p 142.

The Court then concluded that, even if the defendant had negligently placed the poles too close to the highway, this negligence was not the proximate cause of the accident because the defendant "could not have foreseen a collision of this kind resulting from an act of negligence by another party, forcing the car in which plaintiff was riding to leave the main portion of the road". *Dawson, supra,* p 142.

In *Cramer,* the plaintiff drove his car into the defendant's electric light pole at night. The pole was positioned at the end of a median parkway 10 feet 2 inches in width, and was surrounded by three 3-foot unlighted metal posts set a foot back from the curb. The night was clear, the plaintiff had his headlights on, and he was driving between 15 and 19 miles per hour, but he was unable to see either the pole or its surrounding posts until he was too close to stop. He could, however, see bushes behind the pole, and time his braking for that distance.

The Supreme Court held that the defendant was not guilty of actionable negligence because the pole "was back a short distance from the curb at the east end of the parkway and the posts set between that pole and the curb of the parkway. So situated the posts were not a menace to travel on

the highway, and there was no duty on the part of defendant to advertise the presence of the posts by warning signs". *Cramer, supra,* p 667. The Supreme Court did, however, find the plaintiff negligent because he had failed to turn his car until it was too late to avoid striking the three posts in front of the light pole.

Plaintiffs do not believe that the lower court should have relied on these cases, principally because both are more than 40 years old. While it may be true that some cases do not age gracefully, it is for the Supreme Court to overrule or modify its case law when and if it becomes obsolete. Pending such action, this Court and all lower courts are bound by that authority.

We distill from *Cramer* and *Dawson* the following rule: actionable negligence will not be found in a utility company for erection or maintenance of a pole unless it is on the traveled portion of the highway or in such close proximity thereto as to constitute an obstruction dangerous to anyone properly using the highway. The lighting pole in this case was located on a grassy median strip, not itself a traveled portion of the roadway, approximately three feet from the paved surface of the road. Under these facts we find that defendant breached no duty to plaintiffs in failing to design the pole in anticipation of the possibility that an automobile, leaving the roadway out of control, would collide with it.

Duty is one of six elements of an action in negligence, *Moning v Alfono,* 400 Mich 425, 437; 254 NW2d 759 (1977). The duty is always the same in negligence cases: the actor must "conform to the legal standard of reasonable conduct in the light of the apparent risk". *Moning, supra,* p 437 citing Prosser, Torts (4th ed), § 53, p 324. The

words "reasonable conduct" suggest a balancing test:

"Even if a person recognizes that his conduct involves a risk of invading another person's interest, he may nevertheless engage in such conduct unless the risk created by his conduct is unreasonable.

"The reasonableness of the risk depends on whether its magnitude is outweighed by its utility. The Restatement provides: 'Where an act is one which a reasonable man would recognize as involving a risk of harm to another, the risk is unreasonable and the act is negligent if the risk is of such magnitude as to outweigh what the law regards as the utility of the act or of the particular manner in which it is done.' 2 Restatement, [Torts 2d], § 291.

"The balancing of the magnitude of the risk and the utility of the actor's conduct requires a consideration by the *court and jury* of the societal interests involved. The issue of negligence may be removed from jury consideration if the court concludes that overriding considerations of public policy require that a particular view be adopted and applied in all cases." (Footnote omitted.) *Moning, supra,* pp 449-450.

The magnitude of a risk is, logically, a product of the potential seriousness of an incidence of harm and the relative probability of harm. In this case a singular occurrence of collision between an imperiled vehicle and an inflexible light pole could have serious consequence. However, the probability that a vehicle will career involuntarily off the traveled surface of a road, striking a particular pole with such force as to endanger its occupants, is relatively slight.[1]

---

[1] This is probably why several courts have held, in similar cases, that location or design of a utility pole was not a proximate cause of the plaintiff's injuries. See, *e.g., Dawson, supra. Hyde v County of Rensselaer,* 73 App Div 2d 1021; 424 NYS2d 755 (1980), aff'd 51 NY2d 927; 434 NYS2d 984; 415 NE2d 972 (1980); *Gulf Oil Corp v Stanfield,* 213 Ga 436; 99 SE2d 209 (1957). The question of proximate cause, like

Against this must be balanced the utility of the conduct or of the particular manner in which it is done. Defendant's act itself is of considerable utility, *i.e.,* serving to illuminate a street after dark and hence render it more safe for public travel. The utility of this conduct is dependent at least in part upon a close proximity between the lighting fixtures and the roadway. Additionally, the expense of crash-proofing the poles, even assuming that such is practicable, degrades from the utility of the conduct by making it less cost effective.

Once again, the drawing of this balance is a jury matter unless public policy militates in favor of uniformity. Tort liability has the effect, and to a degree the purpose, of regulating a defendant's future conduct. It is thus beneficial to develop and adhere to standards governing a utility company's duty regarding the placement and design of utility poles. The rule set forth by *Dawson* and *Cramer* accomplishes this by holding that a utility has acted reasonably in light of the risk of harm if it locates its poles so as not to constitute an obstruction dangerous to anyone *properly using* the highways. See also MCL 247.185; MSA 9.265. Other jurisdictions have similarly held that a utility company is under no obligation to guard against extraordinary exigencies created when a vehicle leaves the traveled portion of the roadway out of control. *Speigel v Southern Bell Telephone & Telegraph Co,* 341 So 2d 832 (Fla App, 1977); *Oram v New Jersey Bell Telephone Co,* 132 NJ Super 491; 334 A2d 343 (1975); *Wood v Carolina Telephone & Telegraph Co,* 228 NC 605; 46 SE2d 717; 3 ALR2d 1 (1948); *Monaco v Comfort Bus Line, Inc,* 134 NJL 553; 49 A2d 146 (1946).

that of duty, depends largely upon foreseeability. *Moning, supra,* p 439.

It is not disputed that the light pole in question was located approximately three feet from the traveled portion of the roadway. We cannot view this as an obstruction dangerous to anyone properly and normally using that roadway. See, *e.g.,* *Shapiro v Toyota Motor Co, Ltd,* 38 NC App 658; 248 SE2d 868 (1978); *Frangis v Duquesne Light Co,* 232 Pa Super 420; 335 A2d 796 (1975); *Wood, supra.*

Plaintiffs' alternative theory was that defendant breached a "covenant" made in an application by which it obtained from the Michigan State Highway Commission a permit to install the street lights. In this application, defendant agreed, *inter alia,* to "[t]ake, provide and maintain all necessary precautions to prevent injury or damage to persons and property from operations covered by this permit and use safety devices which are approved by the Michigan Department of State Highways". Viewing the document as a whole, we do not find that defendant engaged to protect the motoring public from harms associated with the light poles themselves. The quoted language is limited by its own terms to "operations covered by this permit", *i.e.,* installation of the light poles. Summary judgment was properly granted in favor of defendant.

Affirmed.

HOOD, J., concurs in the result only.