**EAKES v. CITY OF DURHAM**

[125 N.C. App. 551 (1997)]

GERTRUDE C. EAKES, Executrix of the Estate of WALTER LEWIS EAKES, Plaintiff v. THE CITY OF DURHAM, Defendant

No. COA96-543

(Filed 4 March 1997)

**Highways, Streets, and Roads § 11 (NCI4th)— summary judgment—negligent placement of street sign—no legal responsibility in municipality**

The trial court did not err in an action arising from an automobile accident in granting summary judgment in favor of defendant-city where plaintiff alleged negligence in the placement of a street sign but defendant had no legal responsibility for the area where the alleged negligence occurred. That area was part of the State highway system and not part of defendant's municipal roadway system even though it was located within municipal limits. N.C.G.S. §160A-297(a).

**Am Jur 2d, Highways, Streets, and Bridges §§ 337-340, 352, 371, 380, 387, 422, 434, 435.**

Appeal by plaintiff from Order entered 23 January 1996 by Judge Orlando F. Hudson in Durham County Superior Court. Heard in the Court of Appeals 28 January 1997.

This case arises out of an automobile collision which occurred on 8 October 1993 in Durham, North Carolina. Walter Lewis Eakes, the plaintiff's intestate, was driving eastbound on Elba Street approaching the intersection of Elba Street, Trent Drive, and N.C. Highway 147. Mr. Eakes turned left at the intersection, attempting to turn onto Trent Drive, but mistakenly turned onto the N.C. Highway 147 exit ramp and proceeded in the wrong direction (against traffic) along the ramp and onto N.C. Highway 147. N.C. Highway 147 is a four lane roadway divided by a median in the center with two lanes of travel in opposite directions. Mr. Eakes entered N.C. Highway 147 traveling east, against the flow of traffic, in the westbound lanes of traffic. He then collided head-on with a vehicle traveling west in the westbound lanes of traffic on N.C. Highway 147. Mr. Eakes died fourteen days later from injuries sustained in the accident.

Trent Drive and Elba Street are both city streets, located within the city limits of Durham and maintained by the City of Durham. N.C. Highway 147 is a state highway, also located within the city limits of Durham, but maintained by the North Carolina Department of

Transportation (NCDOT). Elba Street and Trent Drive share an intersection with the entry and exit ramps for N.C. Highway 147. Elba Street approaches the intersection from the west and Trent Drive approaches the intersection from the south. The entry and exit ramps to N.C. Highway 147 approach the intersection from the east and north, respectively. The entry ramp to N.C. Highway 147 permits one way traffic onto the highway and proceeds east from the intersection, commencing at the termination of Elba Street. The exit ramp from N.C. Highway 147 permits only one way traffic and approaches the intersection from the north, terminating at the beginning point of Trent Drive.

On 3 March 1992, the City of Durham installed a city street sign for Trent Drive on the south side of the traffic island separating Elba Street from the N.C. Highway 147 Exit ramp. The sign faced eastbound traffic on Elba Street and noted the intersection with Trent Drive to the south. The plaintiff contends that the placement of this sign and the absence of additional signs noting the exit ramp to N.C. Highway 147 caused Mr. Eakes to drive onto the one way exit ramp and ultimately into oncoming traffic on N.C. Highway 147.

The plaintiff filed a Complaint against the City of Durham (the City) alleging that the City was negligent when it "[f]ailed to erect and maintain signs at the intersection of the N.C. Highway 147 Exit, Elba Street and Trent Drive, which clearly marked, identified and distinguished those intersecting streets from the exit ramp of N.C. Highway 147" and that the City negligently "[e]rected and placed a street sign at the above-described intersection which incorrectly identified the exit ramp of N.C. Highway 147 as Trent Drive."

On 3 November 1995, the City filed a motion for summary judgment pursuant to Rule 56 of the North Carolina Rules of Civil Procedure arguing that the plaintiff's claims were barred by governmental immunity and the City had no legal responsibility for the area where the alleged negligence occurred because those areas are part of the North Carolina State Highway system and not part of the City's municipal roadway system. On 23 January 1996, Judge Orlando F. Hudson entered an Order granting the City's motion for summary judgment. The plaintiff appeals from that Order.

*King, Walker, Lambe & Crabtree, by Guy W. Crabtree, for the plaintiff-appellant.*

*Faison & Gillespie, by Reginald B. Gillespie, Jr. and Keith D. Burns, for the defendant-appellee.*

EAKES v. CITY OF DURHAM

[125 N.C. App. 551 (1997)]

EAGLES, Judge.

By her sole assignment of error, the plaintiff contends that the trial court erred in granting summary judgment to the City on the grounds of governmental immunity when genuine issues of material fact exist as to the City's control over the intersection of Elba Street, Trent Drive and N.C. Highway 147.

The question raised here is whether governmental immunity protects a municipality from suit for damages caused by a dangerous condition on a street located within a municipality's city limits but part of the state highway system and not subject to a maintenance contract between the city and the state.

A municipality may not be held liable for its acts if the incident arises out of a governmental function. *Colombo v. Dorrity*, 115 N.C. App. 81, 84, 443 S.E.2d 752, 755 (1994). "Unless a right of action is given by statute, municipal corporations may not be held civilly liable for neglecting to perform or negligence in performing duties which are governmental in nature." *Id.* "[A] municipality while acting on the State's behalf in promoting or protecting health, safety, security or the general welfare of its citizens, is an agency of the sovereign and not subject to an action in tort for resulting injury to person or property. . . ." *Id.*

Here, the plaintiff alleges that the actions of the City fall within a long recognized exception to the doctrine of governmental immunity. "While the maintenance of public roads and highways is generally recognized as a governmental function, exception is made in respect to streets and sidewalks of a municipality." *Millar v. Wilson*, 222 N.C. 340, 342, 23 S.E.2d 42, 44 (1942) (emphasis added). Municipalities have a positive duty to maintain their streets and sidewalks in a safe condition and are liable for failing to discharge that duty. *McDonald v. Village of Pinehurst*, 91 N.C. App. 633, 635, 372 S.E.2d 733, 734 (1988) (emphasis added); *see also, Matternes v. City of Winston-Salem*, 286 N.C. 1, 8, 209 S.E.2d 481, 485 (1974); *Smith v. Hickory*, 252 N.C. 316, 113 S.E.2d 557 (1960).

This common law exception to the rule of governmental immunity applies only to the streets and sidewalks of a municipality. A different rule applies when the street is part of the State highway system. N.C.G.S. 160A-297(a) provides:

"A city shall not be responsible for maintaining streets or bridges under the authority and control of the Board of Transportation,

and shall not be liable for injuries to persons or property resulting from any failure to do so."

N.C.G.S. 160A-297(a) (1994).

Our legislature has also provided a rule of liability for roadways which are part of the State highway system but are located within the corporate limits of a municipality. N.C.G.S. 136-66.1 provides, in pertinent part:

"Responsibility for streets and highways inside the corporate limits of municipalities is hereby defined as follows:

(1) The State Highway System.—The State highway system inside the corporate limits of municipalities shall consist of system of major streets and highways necessary to move volumes of traffic efficiently and effectively from points beyond the corporate limits of the municipalities through the municipalities and to major business, industrial, governmental and institutional destinations located inside the municipalities. The Department of Transportation shall be responsible for the maintenance, repair, improvement, widening, construction and reconstruction of this system. . . .

(2) The Municipal Street System.—In each municipality the municipal street system shall consist of those streets and highways accepted by the municipality which are not a part of the State highway system. The municipality shall be responsible for the maintenance, repair, construction, reconstruction, and right-of-way acquisition for this system.

(3) Maintenance of State Highway System by Municipalities.—Any city or town, by written contract with the Department of Transportation, may undertake to maintain, repair, improve, construct, reconstruct or widen those streets within municipal limits which form a part of the State highway system, and may also, by written contract with the Department of Transportation, undertake to install, repair and maintain highway signs and markings, electric traffic signals and other traffic control devices on such streets. . . ."

N.C.G.S. 136-66.1(1993).

"By virtue of the North Carolina General Statutes, a municipality is not liable for accidents which occur on a street which is part of the State highway system and under the control of the NCDOT." *Colombo*

*v. Dorrity,* 115 N.C. App. 81, 85, 443 S.E.2d 752, 755 (1994). Absent a contract with the Department of Transportation, a city has no responsibility for the maintenance or condition of a street within the State highway system and no liability to any person injured by a defective condition on a street within the State highway system, even when that street is located within the corporate limits of the city. *Matternes v. City of Winston-Salem,* 286 N.C. 1, 10-11, 209 S.E.2d 481, 486 (1974). A municipality is not liable in tort to individuals who sustain personal injuries in accidents caused by a defective condition on a State highway without a contract between the municipality and the NCDOT pertaining to that section of the roadway. *Id.; see also, Colombo v. Dorrity,* 115 N.C.App. 81, 86, 443 S.E.2d 752, 756 (1994). N.C.G.S. 160A-297(a), which states that a municipality is not liable for a defective condition on a State roadway, is intended to apply when there is no contract between the city and the Department of Transportation. *Id.*

Mr. Eakes' fatal accident occurred on a section of N.C. Highway 147 within the corporate limits of the City of Durham. The City is not liable for defective conditions on N.C. Highway 147 absent a contract with the NCDOT. N.C.G.S. 160A-297(a) (1994). At the time of the accident, the City had contracted with the NCDOT for maintenance by the City of certain traffic control devices along State highway system streets and highways located within the municipal corporate limits of the City. This contract specifically excepted "controlled access highways." N.C. Highway 147 is a "controlled access highway," therefore neither the highway nor its entry or exit ramps are subject to the contract between the City and the NCDOT. In fact, all areas within the boundaries of the "controlled access" area are part of the State Highway system and are excepted from the contract between the City and the NCDOT. The city of Durham is not responsible for dangerous conditions within the "controlled access" areas.

In an affidavit presented to the court by the City on their motion for summary judgment, Owen W. Synan, Director of the City's Department of Transportation, stated that the "controlled access area" included the intersection of Elba Street and Trent Drive, both of the traffic islands located at the intersection of Elba Street and Trent Drive, and a portion of Trent Drive south of the intersection.

The plaintiff contends that the dangerous condition causing Mr. Eakes' fatal accident was specifically the Trent Drive sign located on a traffic island at the Elba Street, Trent Drive intersection. This area

of the roadway is not part of the Durham municipal street system but is part of the State highway system. Therefore, the common law exception to governmental immunity for municipal streets does not apply. The intersection is also part of the "controlled access" area. Because this area was excepted from the contract between the City and the NCDOT, the City is not subject to suit under the contract. Conditions at the Elba Street and Trent Drive intersection are the legal responsibility of the State and the City is not liable for dangerous conditions at the intersection by exception to the governmental immunity doctrine, by statute, or by contract.

The plaintiff further contends that the City exposed itself to liability by placing the Trent Drive sign at the intersection because, by doing so, the City was maintaining one of its own municipal streets, Trent Drive south of the intersection. Plaintiff relies on this Court's decision in *Shapiro v. Motor Co.*, 38 N.C. App. 658, 248 S.E.2d 868(1978), wherein the Court stated "[I]n the absence of any control over a state highway within its border, a municipality has no liability for injuries resulting from a dangerous condition of such street unless it created or increased such condition." 38 N.C. App. at 662, 248 S.E.2d at 875. The plaintiff's reliance is misplaced. The *Shapiro* case suggests a municipality may be liable if it "created or increased" a dangerous condition on a State highway. *Id.* We note that here the City of Durham acted to improve the safety of the Elba Street and Trent Drive intersection by erecting the Trent Drive sign, installing pedestrian crossing signs and pedestrian crosswalk markings, and by replacing two damaged stop signs.

Accordingly, we affirm the order of the trial court entering summary judgment in favor of the City of Durham.

Affirmed.

Judges GREENE and McGEE concur.