O'BRIEN *v.* UNION TELEPHONE CO.

1. TELEGRAPHS AND TELEPHONES—NEGLIGENCE—PERSONAL INJURIES —HIGHWAYS AND STREETS—NOTICE.

In an action for personal injuries caused by the presence in the graded part of a highway of a guy wire attached to a metal stake and supporting one of defendant's telephone poles, where the conditions had remained as they were for at least five months, defendant will be presumed to have had notice thereof.

2. SAME—FAILURE OF DRIVER TO DISPLAY LIGHT—DIRECTED VERDICT.

Where it cannot be said, as a matter of law, that the failure of the driver of a cutter to display a light on the left side, as required by Act No. 126, Pub. Acts 1921, caused or contributed to the accident and injury to plaintiff when the right-hand runner of the cutter came in contact with defendant's guy wire in the graded portion of the highway, the trial court properly refused to direct a verdict for defendant.

3. EVIDENCE—HYPOTHETICAL QUESTIONS BASED ON PROOF.

Answers to hypothetical questions predicated upon proof submitted were admissible.

4. APPEAL AND ERROR—TRIAL—OMISSION TO GIVE REQUESTED INSTRUCTION NOT REVERSIBLE ERROR.

Omission to give a requested instruction that no recovery could be had for any aggravation of a disease or physical condition existing previous to plaintiff's injury, *held*, not reversible error where it was made clear to the jury at the outset of the case that no such claim was made.

5. DAMAGES—EXCESSIVE VERDICT.

A verdict of $6,607 for personal injuries to a young woman 23 years of age cannot be said to be excessive, where it appears her loss of earnings would be a considerable part of said sum, and she testified that she had been in constant pain.

On excessiveness of verdicts in actions for personal injuries other than death, see comprehensive note in L. R. A. 1915F, 30.

6. NEW TRIAL—GREAT WEIGHT OF EVIDENCE.
  A verdict for plaintiff *held*, not against the great weight
    of the evidence.

Error to Isabella; Hart (Ray), J.   Submitted June
5, 1924.   (Docket No. 57.)   Decided July 24, 1924.

Case by Agnes O'Brien against the Union Telephone
Company for personal injuries.   Judgment for plain-
tiff.   Defendant brings error.   Affirmed.

*William A. Bahlke (Frank H. Dusenbury,* of coun-
sel), for appellant.

*Dodds & Dodds,* for appellee.

SHARPE, J.   Mission avenue, a paved street in the
city of Mt. Pleasant, is a part of the State trunk line
highway designated as M 14.   Before being paved,
defendant had placed a pole on the corner of the inter-
section of this avenue and Lincoln street, and for its
support had run a guy wire to a metal stake em-
bedded in the earth near the outer edge of a ditch along
the street.   The pavement was 20 feet wide.   The stake
and guy wire apparently were not removed when the
pavement was put down, and the stake then stood
about 12 inches from the edge of the pavement and on
the shoulder of earth which extended a few feet outside
the pavement and on a level with it for its support.   On
December 26, 1921, there was sufficient snow and ice
on the ground for the use of cutters and sleighs.
About 9 o'clock in the evening of that day, plaintiff
and Margaret Tobin were riding with Albert Kersey
in a cutter on Mission avenue.   An automobile
came up from behind.   Kersey, whose horse was
traveling about six miles an hour, turned to the
right, and the runner on the right-hand side struck
the guy wire and plaintiff was thrown out and quite
severely injured.   She brought this action to recover

the damages occasioned thereby, and was awarded a verdict of $6,607. Defendant reviews by writ of error the judgment entered thereon.

1. There was no proof that any of defendant's officers, agents or employees had notice or knowledge of the changed condition of the street. Its counsel requested an instruction for a directed verdict in its favor for that reason. Telephone companies have the right to construct and maintain their poles and lines of wire upon the public streets, "*Provided* * * * That the same shall not injuriously interfere with other public uses of the * * * streets." 1 Comp. Laws 1915, § 4470.

"Any person making use of the public highways must use them with care, and must have due regard to the rights of others. Those having occasion to use them for the customary purposes of travel and passage have the first right, and their use must not be obstructed except under circumstances that are quite exceptional, and that make out a clear excuse." *Burford* v. *City of Grand Rapids*, 53 Mich. 98, 106 (51 Am. Rep. 105).

The graded portion of this street extended about two feet beyond the pavement on either side of it, and was on a level with it. Clearly, any person using the street for travel had the right to use the entire graded surface for such purpose. The grading was done in June or July. The accident happened on December 26th. The guy wire and iron post to which it was attached were permitted to remain in the position in which they were first placed for at least five months after the grading was done. That it constituted an obstruction to the free use of the graded portion of the street could not but be apparent to all observers. Collision with it in the day time might, of course, be avoided by drivers of vehicles. There were no street lights near it. To say that the defendant's agents and servants in charge of its operations at

Mt. Pleasant did not know of its location on the graded part of the street at the time of the accident is to ascribe to them a failure to exercise reasonable official care.   *Dotton* v. *Village of Albion,* 50 Mich. 129, 132.   We think the undisputed facts afforded sufficient grounds for presuming notice to the defendant as a matter of law.   *Handy* v. *Township of Meridian,* 114 Mich. 454, 457; 28 Cyc. p. 1392.

2. Defendant asked for a directed verdict because the proof showed that the driver did not have a light "displayed in a conspicuous place on the left side" of the cutter, as required by Act No. 126, Pub. Acts 1921 (Comp. Laws Supp. 1922, § 4865 [7, 8]).   We cannot say as a matter of law that the absence of such a light caused or contributed to plaintiff's injury. *Spencer* v. *Phillips & Taylor,* 219 Mich. 353.

3. Error is alleged upon permitting the doctors called by plaintiff to answer certain hypothetical questions as to the cause of plaintiff's then physical condition and the probability of its continuance.   Dr. Pullen, the family physician, was called to treat plaintiff immediately after the accident.   He found—

"a fractured collar bone, an injury in the region of the attachment of the fourth and fifth rib to the breast bone on the right side."

He reduced the fracture.   It was his judgment that the pain of which she complained, due to the other injury, was caused by "some violence at that region, a blow or something of that type," of which he found some external evidence.   That it was not more marked was in his opinion due to the fact that she had much clothing on.   Bandages were applied for about four weeks.   He testified that "she still complained of pain in that region," and the "best explanation" he had "to offer" was that it was due to the injury sustained at the time of the accident; that she had lost considerable in weight, and her nerves seemed much

affected; that she was then in no condition to resume work, and needed a long rest and proper treatment, preferably in a hospital or sanitarium. Dr. Sample and Dr. Bronstetter had examined plaintiff before the trial, the former using—

"a fluoroscope or screen in which you look through the screen and watch the movements of the heart, lungs and diaphragm, which is the muscular partition between the lungs and lower organs such as the liver."

He found her in a "depressed condition," and, in response to a hypothetical question (answered without objection), expressed his opinion "that the present condition I find her in is the result of that accident." The hypothetical questions put to each of the doctors, of which complaint is made, but elicited the opinion thus expressed by Dr. Sample. Without quoting them, it is sufficient to say that they were predicated upon proof submitted by plaintiff, and the answers thereto were admissible.

4. Error is assigned upon the court's refusal to give the following request:

"The plaintiff cannot recover in this cause for any aggravation of a disease or physical injury or condition which may have existed previous to the accident or injury which she claims to have received December 26, 1921."

Counsel for plaintiff concede that it should have been given. In the opinion filed by the trial court in denying the motion for a new trial, based in part on such refusal, he states that during the argument defendant's attorney handed to him certain requests "which were written on loose pieces of penciled paper" and signed by defendant's attorney; that the request in question appears in the files on a "separate sheet of paper," and if it was among those handed to him it was overlooked by him. In the bill of exceptions,

it is stated that this request was preferred by defendant, and we must so consider it in determining whether the failure to give it constituted reversible error. To so determine, we must look to the proofs.

On the cross-examination of Dr. Pullen, who was called before plaintiff or her mother, counsel elicited the fact that plaintiff when a young girl had suffered an injury to her left hand or wrist. When plaintiff's mother was being examined, her counsel asked as to the cause of such injury. Defendant's counsel asked, "Do you claim any aggravation of the existing injury?" After some discussion, plaintiff's counsel said, "There is nothing in the declaration that claims aggravation of previous injury," and stated that his purpose was to show "that her condition here today is not the result of that injury." Just before the proofs were closed, the plaintiff was recalled and questioned about the enlarged condition of her throat. Defendant's attorney then said:

"I ask the attorneys now to state to me whether they claim this testimony is offered for the purpose of recovering damages for the aggravation of the goitre or injury or for some other purpose?"—

to which plaintiff's attorney replied:

"I think I stated before we are not making it in regard to the injury in any respect."

Whereupon the court said:

"I don't understand this is to recover any damages or to aggravate any damages?"

The plaintiff was the last witness called by her counsel. On cross-examination, she stated:

"I never knew of ever suffering with a goitre or ever had any trouble with my throat in the region where the goitre would naturally be located."

She admitted that a "looking glass" disclosed to her that her "throat is a little larger than normal," but denied that she had ever been informed that she was afflicted with goitre, although admitting that Dr. Sample when examining her referred to her enlarged throat and asked if it ever troubled her.

The defense called but two witnesses, both doctors, and both of whom, after having examined plaintiff, testified that she was suffering from toxic goitre and, in effect, that her depressed nervous condition was due thereto.   It is quite remarkable that in the cross-examination of the three doctors called by plaintiff no allusion was made to the fact that she was suffering from a goitre or any suggestion made that her then condition was occasioned thereby.

In the request under consideration, it will be noted that a goitre is not referred to.   In his charge, the trial court did not refer to the condition of plaintiff's hand or the claim of the defendant that she was afflicted with goitre.   He said:

"If you find that she is entitled to recover she should recover such reasonable compensation covering these items: *First,* for any and all pain and suffering which she endured as a result of such injury, and if she has not fully recovered therefrom, for any and all pain and suffering she will, in your opinion, hereafter endure as the consequences thereof; *Second,* the expenses which she has fairly and in good faith incurred for medical treatment and attention in consequence of such injury."

He eliminated the question of permanent injury from the consideration of the jury, and limited recovery to such damages as would compensate her for the injury sustained.   In denying the motion for a new trial, the trial court said:

"There was absolutely no claim made during the trial of the case for aggravation of damages and the court feels that the claims of the parties were fairly

presented to the jury and that the defendant had every advantage of this defense.    Plaintiff's attorney in his final argument told the jury they were not asking or seeking damages for any condition which they might find existed outside of the injury complained of in this case."

In view of the facts as stated, we are of the opinion that the jury could not have been misled in their allowance of damages.    It was made clear to them at the outset of the case that plaintiff made no claim for aggravation of conditions existing at the time of her injury.    The three doctors whom she called as witnesses, all of whom carefully examined her, testified that her suffering and nervous depression since the accident were due to the injury then sustained by her.    They saw her enlarged throat, and must have given it consideration in reaching the conclusion stated.    While cross-examined at length, no suggestion that she was suffering from a goitre was made to any of them.    There was no intent on the part of the court to refuse the request preferred.    Neither was there objection on the part of plaintiff's counsel to its being given.    We cannot affirmatively say that the omission to give it has resulted in a miscarriage of justice.

5. The verdict is said to be excessive.    At the time of her injury, plaintiff was 23 years of age and unmarried.    She had for a considerable time been earning $20 per week as a clerk in a store.    The trial was had about 18 months after her injury.    The doctors' testimony indicated that it would be a considerable time, one of them said about two years, before she would become normal and able to work again.    Her loss of earnings would be a very considerable part of the sum awarded her.    If she be believed, she has been a constant sufferer since her injury.    She testified:

"The kind of pain that I suffer in my chest is just like as if something was lodged there.    It is sharp and hard.    It is constant and it feels to me as though it was deeper, I imagine, than in the breast bone.    So far nothing that I have done or been able to do has given any relief from that pain."

Dr. Pullen's bill for services rendered her was $50. There is nothing in the record to indicate that the verdict was the "result of prejudice or passion or influence other than the evidence in the case," and we feel unwilling to substitute our judgment as to what sum would fairly compensate her for the injuries sustained for that of the jury.    *Fishleigh* v. *Railway,* 205 Mich. 145.

6. It was urged on the motion for a new trial that the verdict was against the great weight of the evidence.    We cannot so conclude.    The record fairly discloses that plaintiff was entitled to a verdict.    The only question was how much.

The other errors assigned have been considered, but in our opinion are not of sufficient importance to merit discussion.

The judgment is affirmed.

CLARK, C. J., and McDONALD, BIRD, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.