McMILLAN v STATE HIGHWAY COMMISSION

Docket No. 73474. Argued December 18, 1985 (Calendar No. 8).
Decided September 16, 1986.

Tamara McMillan and Patricia McMillan brought an action in
the Oakland Circuit Court against the State Highway Commis-
sion, the Oakland County Road Commission, the City of Royal
Oak, and the Detroit Edison Company for damages arising from
injuries received by Tamara when the automobile in which she
was a passenger was struck by a hit-and-run driver while
traveling on a state-owned highway in the City of Royal Oak,
causing the vehicle to go out of control and strike a utility pole
owned by Detroit Edison which was located in the median of
the highway. Following a mediation award below $10,000, the
case was remanded to the 52-4 Judicial District Court. The
court, James Raymond Hand, J., granted summary judgment
for Detroit Edison, finding that it owed no duty to the plaintiffs
as a matter of law in regard to the placement or maintenance
of the utility pole. The circuit court, Hilda R. Gage, J., affirmed.
The Court of Appeals, CYNAR, P.J., and JASON, J. (HOOD, J.,
concurring only in the result), affirmed in an opinion per
curiam (Docket No. 65038). On reconsideration, the plaintiffs
appeal.

In an opinion by Justice CAVANAGH, joined by Chief Justice
WILLIAMS and Justices LEVIN, BRICKLEY, and BOYLE, the Su-
preme Court held:

The summary judgment granted as a matter of law by the
courts below should be set aside. Upon remand, should the
defendant seek summary disposition upon the basis of a lack of
a genuine issue of material fact, the trial court may consider
such factors as the location of the utility pole, its proximity to
and the configuration of the roadway, whether the utility
company had notice of previous accidents at that location, and
whether alternative, less dangerous locations for the pole ex-
isted. After considering these factors and any others probative

REFERENCES

Am Jur 2d, Electricity, Gas, and Steam §§ 127, 191 et seq.
See the annotations in the ALR3d/4th Quick Index under Electric-
ity and Electric Companies.

of the issue, the court, upon finding that reasonable minds could differ as to whether the defendant acted negligently in the placement of the pole, should place the issue before the jury.

1. Case law which provides that a private utility company owes no duty to the occupants of a vehicle which leaves the traveled portion of a roadway must be overruled. Plaintiffs in cases such as this case should not be precluded, as a matter of law, from presenting their cases to a jury. The questions whether a duty on the part of the utility company exists and whether the placement of the poles was so significant as to be regarded a proximate cause of the plaintiff's loss turns on resolution of the question whether the utility's conduct created an unreasonable risk of harm to the plaintiff and the result of that conduct and the intervening causes were foreseeable. When reasonable minds may differ with regard to application of the reasonableness of the risk of harm, the question is best left to the jury.

2. The overruling of the case law is to be given limited retroactive effect: It is applicable to this case, all cases pending on appeal in which the issue has been preserved for review, and all cases where the issue is pending in the trial court.

3. The permit granted Detroit Edison by the State Highway Commission to install street lights on the median of the highway was not intended to be a contract which would benefit the plaintiffs. Summary judgment on this claim was properly granted.

Affirmed in part, reversed in part, and remanded for a new trial.

Justice RILEY, dissenting, stated that the undisputed facts and circumstances of this case and the evidence presented in support of plaintiffs' allegations, when viewed in the light most favorable to the plaintiffs, were insufficient to raise a question for the jury concerning whether the placement and design of the utility pole in question created an unreasonable risk to the occupants of the vehicles in the ordinary course of highway travel. The question is not whether a utility company has any legal obligation to occupants of vehicles which leave the traveled portion of a highway to use reasonable care in the placement and maintenance of utility poles, but whether, under the circumstances of a case, the utility conformed to the legal standard of reasonable conduct in the light of the apparent risk. A utility should be held to have acted reasonably in light of the risk of harm where, with public authorization and specific approval, it has erected its poles in or near a public

highway without dangerously and unreasonably obstructing highway travel in the ordinary course.

Justice ARCHER took no part in the decision of this case.

130 Mich App 630; 344 NW2d 26 (1983) affirmed in part and reversed in part.

*Dawson v Postal Telegraph-Cable Co,* 265 Mich 139; 251 NW 352 (1933), and *Cramer v Detroit Edison Co,* 296 Mich 662; 296 NW 831 (1941), overruled.

OPINION OF THE COURT

1. PUBLIC UTILITIES — HIGHWAYS — UTILITY POLES — DUTY OF CARE — QUESTIONS OF FACT.

The determination of the question whether a private utility company which placed a utility pole in the median of a highway owed a duty of reasonable care to the occupant of a vehicle which left the traveled portion of the highway and struck the pole depended in part on the resolution of the question of foreseeability; where reasonable minds may differ regarding the application of the reasonableness of the risk of harm, the question is best left to the jury.

DISSENTING OPINION BY RILEY, J.

2. PUBLIC UTILITIES — HIGHWAYS — UTILITY POLES — DUTY OF CARE.

*A utility should be held to have acted reasonably in light of the risk of harm in erecting utility poles in or near a public highway where it is shown that with public authorization and specific approval it erected the poles without dangerously and unreasonably obstructing highway travel in the ordinary course.*

*William L. Fisher (Goodman, Eden, Millender & Bedrosian,* by *Robert A. Koory,* of counsel) for the plaintiffs.

*Leon S. Cohan* and *Michael D. Gladstone* for defendant The Detroit Edison Company.

Amicus Curiae:

*Richard M. Goodman, P.C.* (by *Susan E. Lister*), *Portner & Stine, P.C.* (by *Arnold D. Portner*), and *Mark R. Granzotto* for Michigan Trial Lawyers Association.

Cavanagh, J. The lower courts ruled, as a matter of law, that Detroit Edison owed no duty of reasonable care to an occupant of a vehicle which leaves the traveled portion of the highway and strikes a utility pole located on the median. We reverse.

On January 10, 1976, plaintiff Tamara McMillan[1] was a passenger in an automobile traveling south on Woodward Avenue in the City of Royal Oak. Woodward is a state-owned highway. At the point in question, the north- and southbound lanes are separated by a grassy median strip. The vehicle was struck by a hit-and-run driver, went out of control, and collided with a utility pole owned by the defendant Detroit Edison Company. The pole was located on the median, approximately three feet from the traveled portion[2] of Woodward Avenue.

Plaintiff alleged that the construction of a non-energy-absorbing pole, and its placement within three feet of the traveled portion of the highway, constituted a traffic hazard. Paragraph eight of plaintiff's complaint states that, "Defendants owed a duty to plaintiffs to maintain safe traffic conditions including maintaining a utility pole so as to prevent collision with an automobile and/or to minimize injuries to a passenger in the event of such collision." Paragraph nine stated that the defendant "impliedly warranted the crashworthiness of said utility pole in respect to being equipped with a breakaway feature or energy absorbing material . . . ." Plaintiff concluded that

[1] Plaintiff Patricia McMillan is Tamara's mother, and claimed derivative damages. For simplicity, this opinion will refer to the parties in the singular number.

[2] For our purposes, the "traveled portion" of a highway includes the paved surface as well as adjoining shoulders. Although the facts indicate that the pavement was separated from the median in this case by a cement curb, there is no indication in the record that a shoulder separated the pavement from the grassy median.

these duties were breached since the pole was not crashworthy and was located in such a manner as to create a traffic hazard.

The district court granted defendant's motion for summary judgment on the basis of our decisions in *Dawson v Postal Telegraph-Cable Co,* 265 Mich 139; 251 NW 352 (1933), and *Cramer v Detroit Edison Co,* 296 Mich 662; 296 NW 831 (1941).[3] The circuit court affirmed the judgment on appeal.[4] The Court of Appeals granted leave to appeal and affirmed. *McMillan v State Highway Comm,* 130 Mich App 630; 344 NW2d 26 (1983). On reconsideration, we granted leave to appeal and also granted permission to the Michigan Trial Lawyers Association to appear as amicus curiae.

---

[3] The district court's opinion states:

The Court has reviewed the authority cited by Defendant, The Detroit Edison Company, in support of its Motion. Based on that authority, this Court is satisfied that the Defendant, The Detroit Edison Company, owed no duty to Plaintiffs in regards [sic] to the placement or maintenance of the utility pole in question since the utility pole was placed in such a manner as to be wholly outside the traveled portion of the highway and, as such, not a menace to the normal travel on said highway. *Dawson v Postal Telegraph-Cable Co,* 265 Mich 139 (1933); *Cramer v Detroit Edison Co,* 296 Mich 662 (1941).

[4] The circuit court concluded:

The law in Michigan is clear that there is no duty on the part of the Defendant to make the poles more distinct or advertise their presence. Further, the record below supports the conclusion that there was no genuine issue of material fact relative to the placement of the pole in question, which was entirely outside the travel portion of the highway. *Cramer v Detroit Edison Co,* 296 Mich 662 (1941). Defendant cannot be held responsible for a collision resulting from another's act of negligence which forced the car in which Plaintiff was riding to leave the travel portion of the road causing an unforeseen collision of this nature. *Dawson v Postal Telegraph-Cable Co,* 265 Mich 139, 142 (1933).

I

We are essentially faced with the question whether the defendant owes any obligation to avoid negligent conduct to the plaintiff for personal injuries under the facts set forth in the complaint and the settled statement of facts. See *Moning v Alfono,* 400 Mich 425, 436-442; 254 NW2d 759 (1977).

The answer to this question necessarily includes considerations of duty, proximate cause, and the function of the court and jury. Proximate cause can be thought of as a policy determination which is often indistinguishable from the duty question. *Moning, supra,* p 438. Prosser and Keeton address the interrelationship between duty and proximate cause:

> *Once it is established that the defendant's conduct has in fact been one of the causes of the plaintiff's injury, there remains the question whether the defendant should be legally responsible for the injury.* Unlike the fact of causation, with which it is often hopelessly confused, this is primarily a problem of law. *It is sometimes said to depend on whether the conduct has been so significant and important a cause that the defendant should be legally responsible. But both significance and importance turn upon conclusions in terms of legal policy, so that they depend essentially on whether the policy of the law will extend the responsibility for the conduct to the consequences which have in fact occurred.* Quite often this has been stated, and properly so, as an issue of whether the defendant is under any duty to the plaintiff, or whether the duty includes protection against such consequences. This is not a question of causation, or even a question of fact, but quite far removed from both; and the attempt to deal with it in such terms has led and can lead only to utter confusion.

\*   \*   \*

*It is quite possible to state every question which arises in connection with "proximate cause" in the form of a single question: was the defendant under a duty to protect the plaintiff against the event which did in fact occur?* Such a form of statement does not, of course, provide any answer to the question, or solve anything whatever; but it may be helpful since "duty"—also a legal conclusion—is perhaps less likely than "proximate cause" to be interpreted as if it were a policy-free factfinding. *Thus, "duty" may serve to direct attention to the policy issues which determine the extent of the original obligation and of its continuance, rather than to the mechanical sequence of events which goes to make up causation in fact. The question whether there is a duty has most often seemed helpful in cases where the only issue is in reality whether the defendant stands in any such relation to the plaintiff as to create any legally recognized obligation of conduct for the plaintiff's benefit.* [Prosser & Keeton, Torts (5th ed), § 42, pp 272-274. Emphasis supplied.]

The Court of Appeals, citing our earlier decisions in *Dawson* and *Cramer,* declined to impose any obligation on the defendant under the circumstances. The Court "distilled" the following rule from those decisions:

*[A]ctionable negligence will not be found in a utility company for erection or maintenance of a pole unless it is on the traveled portion of the highway or in such close proximity thereto as to constitute an obstruction dangerous to anyone properly using the highway.* The lighting pole in this case was located on a grassy median strip, not itself a traveled portion of the roadway, approximately three feet from the paved surface of the road. Under these facts we find that defendant breached no duty to plaintiffs in failing to design the pole in anticipation of the possibility that an

automobile, leaving the roadway out of control, would collide with it.

\* \* \*

*Other jurisdictions have similarly held that a utility company is under no obligation to guard against extraordinary exigencies created when a vehicle leaves the traveled portion of the roadway out of control. Speigel v Southern Bell Telephone & Telegraph Co, 341 So 2d 832 (Fla App, 1977); Oram v New Jersey Bell Telephone Co, 132 NJ Super 491; 334 A2d 343 (1975); Wood v Carolina Telephone & Telegraph Co, 228 NC 605; 46 SE2d 717; 3 ALR2d 1 (1948); Monaco v Comfort Bus Line, Inc, 134 NJL 553; 49 A2d 146 (1946).* [130 Mich App 635-637. Emphasis supplied.]

In light of the development of the law since our decisions in *Dawson* and *Cramer,* we believe that it is necessary to review these decisions.

### DAWSON AND CRAMER

Defendants argue that *Dawson* and *Cramer* state that a defendant owes no duty to an occupant of a motor vehicle which collides with a utility pole unless the pole is located on the traveled portion of the highway, or is in such proximity thereto as to constitute an obstruction dangerous to anyone properly using the highway. See *Dawson, supra,* p 142. Plaintiff, supported by amicus curiae, contends that neither *Dawson* nor *Cramer* should prohibit a jury from deciding the question of the defendants' negligence.

In *Dawson,* a car swerved to avoid a turning truck and crashed into a pile of telephone poles. The poles were lying a foot or two off the traveled portion of the highway. The trial court found the pole owners liable.

Although the *Dawson* Court stated the general

rule advanced by Detroit Edison in this case, *Dawson* was apparently decided on the basis of a finding of a lack of "proximate cause":

> The following statement from 82 ALR 395 [superseded by 3 ALR2d 6] is borne out by many decisions cited therein:
>
> "It may be stated as a general proposition that a company lawfully maintaining poles in or near a public highway is not liable for the damage to person or property resulting from a road vehicle striking such a pole, unless it is erected on the traveled portion of the highway or in such close proximity thereto as to constitute an obstruction dangerous to anyone properly using the highway, and the location of the pole is the proximate cause of the collision."
>
> *Even were we to assume, however, that defendant* lacked authority or *was otherwise negligent in piling its poles in the untraveled portion of the road, we do not believe that plaintiff could recover against defendant. Such action, even if negligent, was not the proximate cause of the accident.* Defendant could not have foreseen a collision of this kind resulting from an act of negligence by another party, forcing the car in which plaintiff was riding to leave the main portion of the road. [*Dawson, supra,* p 142. Emphasis supplied.]

The *Dawson* Court continued:

> We believe the law is correctly stated in *Wyatt v Chesapeake & Potomac Telephone Co,* [158 Va 470; 163 SE 370 (1932)]:
>
> "Of course it is true that but for the location of this pole there would have been no accident, but its unlawful location and the happening of the disaster leaves the question of causal connection still open. . . . Probable consequences are to be anticipated and not those which are merely possible. . . .
>
> "This pole was in the road and was placed there

without the necessary statutory permit, and so
was negligently placed, but its unlicensed location
did not proximately contribute to plaintiff's hurt,
nor is this affected by her abstract right to use the
entire highway." [*Id.,* p 143.]

The *Dawson* Court concluded that the case was:

[G]overned rather by our statement in *Bleil v
Railway Co,* 98 Mich 228 [57 NW 117 (1893)],
where we said:
"Ample room was left in the street for the
passage of vehicles in the ordinary manner while
under the control of their drivers. . . . The acci-
dent was not the natural and probable result of
piling the rails in the street close to the curb, but
of the fright of the horse. The proximate, and not
the remote, cause controls in such cases in this
State." [*Id.,* p 144.]

Thus, the *Dawson* Court embraced the general
rule that no duty was owed unless the pole consti-
tuted an obstruction dangerous to anyone *properly
using the highway* (the duty question), *and* the
location of the pole was the proximate cause of the
accident (the proximate or legal cause question).
*Dawson* focused on the fact that the accident was
not the natural and probable result of the defen-
dant's conduct (placing the telephone poles close to
the curb). Regardless of whether the question was
framed in terms of duty or proximate cause, it
appears that the *Dawson* Court made a policy
determination that the defendant should not be
held liable for the unforeseeable consequences of
its actions. *Id.*

In *Cramer,* plaintiff drove his car off the road
and hit one of three posts placed on a parkway by
the defendant utility company to protect a light
pole. Without citing *Dawson,* the *Cramer* Court
stated the law as follows:

The ornamental light pole was back about five feet from the curb, at the east end of the parkway, and the posts were set about a foot inside the curb. The guard posts were not in the highway but upon the parkway and were not a menace to travel on the highway. There was no duty on the part of defendant to make the posts more distinct or advertise their presence at that place.

*Clinkenbeard v City of St Joseph,* 321 Mo 71 (10 SW2d 54; 61 ALR 242 [1928]), is like the case at bar.

\* \* \*

The [*Clinkenbeard*] court held (p 89):

"We are of opinion that neither of the defendants herein is chargeable with actionable negligence in the maintenance of the parkway, or its incidents, including the pole in question, which were entirely and wholly outside of the traveled and improved roadway of Ashland boulevard set aside and designated by the defendant city for ordinary vehicular travel and use of the public."

Applying the law to the facts, the Court concluded:

Considering the testimony of the plaintiff in the case at bar in its most favorable light it shows the cause of the accident was the want of care on the part of the plaintiff.

*Under plaintiff's testimony the proximate cause of the accident was his own want of ordinary care.* He was driving near the center of the street and saw a dark object right ahead of him and bushes directly in the path of his car, noticed a traveled portion of the highway on both sides of the bushes and yet he continued his course until it was too late to turn aside and avoid striking the posts.

*The defendant was not guilty of actionable negligence.* The ornamental light pole was back a short distance from the curb at the east end of the parkway and the posts set between that pole and the curb of the parkway. *So situated the posts*

*were not a menace to travel on the highway, and*
*there was no duty on the part of defendant to*
*advertise the presence of the posts by warning*
*signs.* [*Cramer, supra,* pp 666-667. Emphasis sup-
plied.]

The last two quoted paragraphs indicate that
*Cramer* was decided on the basis of two separate
theories. First, the "proximate cause" of the acci-
dent was plaintiff's own want of care. The Court's
discussion of the facts suggest that, even *if* a duty
existed, the plaintiff was barred from recovery due
to his contributory negligence. *Cramer* did not
discuss the accident in terms of foreseeability, but
rather in terms of causation-in-fact. The use of
"proximate cause" in this manner is confusing and
should be contrasted with the use of the phrase in
*Dawson.* See Prosser & Keeton, *supra,* pp 451-453.
We note that while causation-in-fact must always
be shown, the importance of a finding of "contribu-
tory negligence" would be diminished today by the
principles of comparative negligence. *Placek v
Sterling Heights,* 405 Mich 638; 275 NW2d 511
(1979).

Second, and more important for our analysis, is
the fact that *Cramer* stated that "defendant was
not guilty of actionable negligence" because the
placement of the pole and the posts "*were not a
menace to travel on the highway,* and there was
no duty on the part of the defendant to advertise
the presence of the posts by warning signs." This
conclusion, along with the Court's citation of
*Clinkenbeard,* indicates that *Cramer* was also de-
cided on the basis that the defendant did not owe
any duty at all to a motorist leaving the traveled
portion of the highway.

The lower courts were bound by *Dawson* and
*Cramer* under the principles of stare decisis. How-

ever, the Court of Appeals noted that "it is for the Supreme Court to overrule or modify its case law when and if it becomes obsolete." *McMillan, supra,* p 635. We believe that the time has come. To the extent that *Dawson* and *Cramer* stand for the proposition that a private utility company owes no duty whatsoever to the occupants of a vehicle which leaves the traveled portion of the road, we overrule them for the reasons set forth below.

II

Defendant essentially advances a rule which would relieve it of any duty of reasonable care whenever an automobile is not *properly using the highway.* This translates into a rule (supported by *Cramer* and *Dawson*) that defendant owes no duty to an occupant of a vehicle leaving the traveled portion of the highway (since those leaving it are not properly using it).

A number of jurisdictions follow this rule. For example, in *Oram v New Jersey Bell Telephone Co, supra,* plaintiff's car was forced off the roadway by another car and hit a pole located approximately two feet from the road. The *Oram* court stated:

> [A] telephone company is under no obligation of guarding against extraordinary exigencies created when a vehicle leaves the travelled portion of a roadway out of control. *Monaco v Comfort Bus Line, Inc,* 134 NJL 553 [49 A2d 146] (E & A 1946). It need only anticipate ordinary travel which "contemplates an automobile being driven and kept on the roadway." *Monaco v Comfort Bus Line, Inc, supra,* at 557. To require a telephone company to anticipate extraordinary occurrences, such as the one which gave rise to this accident, would be to require it to exercise extraordinary rather than ordinary care to prevent injuries. The duty im-

posed, however, is to provide for the usual and ordinary risks of travel. *Monaco v Comfort Bus Lines, Inc, supra.* [132 NJ Super 494-495.]

See also *Speigel v Southern Bell Telephone & Telegraph Co,* 341 So 2d 832 (Fla App, 1977); *Florida Power & Light Co v Lively,* 465 So 2d 1270, 1276 (Fla App, 1985); *Wood v Carolina Telephone & Telegraph Co, supra; Shapiro v Toyota Motor Co Ltd,* 38 NC App 658; 248 SE2d 868 (1978).

Similarly, in *Simpson v City of Montgomery,* 282 Ala 368; 211 So 2d 498 (1968), a car crashed into a utility pole located two feet, seven inches from a curb. The court cited 3 ALR2d 6 and noted that several cases made a distinction between poles located both on and off the traveled portion of the highway:

> The cases which expressly refer to poles within the median or parkway bounded by a curb as a general rule hold that as a matter of law a utility maintaining a pole in this location does not breach any duty which it owes to the traveling public.
>
> There is a difference between the location of a pole outside the traveled way on a shoulder and the location of a pole outside of the traveled way in the median behind a curb. For this difference to become a matter of law and not a matter of fact, the difference must be one of kind and not merely of degree.
>
> The standard texts state the general rule of no liability where the pole is located in the median. The case most often quoted is that of *Clinkenbeard v City of St Joseph,* 321 Mo 71; 10 SW2d 54; 61 ALR 242. [282 Ala 373.]

The majority of the court also cited our decision in *Cramer* in support of its conclusion that a utility company cannot be liable when it places a pole outside the traveled portion of the highway.

However, other courts have concluded that similar situations present questions which should be submitted to the jury. For example, in *Scheel v Tremblay,* 226 Pa Super 45; 312 A2d 45 (1973), the car swerved to avoid an oncoming car and struck a utility pole placed ten inches from the pavement by defendant Philadelphia Electric Company. The *Scheel* court reversed a summary judgment granted in defendant's favor.

While no genuine issue as to a material fact exists, we believe the trial court erred in ruling as a matter of law that the appellee was not liable for the injuries sustained by Tremblay's passengers. It has long been the law in this and other jurisdictions that utility companies are liable for harm caused by the negligent placement and maintenance of utility poles. *Nelson v Duquesne Light Co,* 338 Pa 37; 12 A2d 299 (1940); *Scalet v Bell Telephone Co,* 291 Pa 451; 140 A 141 (1928); *Little v Central District & Printing Co,* 213 Pa 229; 62 A 848 (1906); see Annot., 3 ALR2d 6. In *Nelson v Duquesne Light Co, supra,* the Supreme Court adopted the test announced by then Judge Cardozo in *Stern v International Ry Co,* 220 NY 284, 291; 115 NE 759 (1917): "The poles, if placed and maintained with due regard for the public safety, are not unlawful obstructions . . . *they must be so located as to avoid any unreasonable danger to travelers on the highway . . . . The question is whether the place chosen is so dangerous and the danger so needless that the choice becomes unreasonable.* If danger in that degree is present [the company is] charged with liability." *Liability is not, as the trial court held, limited to those situations in which the pole is located in the roadway itself, but may be imposed where the placement of a pole close to the edge of a highway constitutes a foreseeable and unreasonable risk of harm to users of the highway.* In such cases, the conditions of the highway are critical in determining whether the location of a utility pole adjacent

thereto constitutes an unreasonable risk of harm to users of the road. *Nelson v Duquesne Light Co, supra; Martin v Southern Bell Telephone Co,* 126 Ga App 809; 192 SE2d 176 (1972); *Bourget v Public Service Co,* 98 NH 237; 97 A2d 383 (1953); *Peninsular Telephone Co v Marks,* 144 Fla 652; 198 So 330 (1940); *Norton v Pomona,* 5 Cal 2d 54; 53 P2d 952 (1935); see 3 ALR2d 6, at pp 51-57. The narrowness and general contours of Scottsdale Road, the lack of illumination of the pole, the presence or absence of reflective markers, the proximity of the pole to the highway, the availability of less dangerous locations, and the natural tendency of westbound traffic to veer toward the middle of the road near this pole are circumstances in light of which *a jury could find that the appellee's placement and maintenance of the pole constituted an unreasonable danger to users of the highway.* [226 Pa Super 47-49. Emphasis supplied.]

Accord *Weiss v Holman,* 58 Wis 2d 608; 207 NW2d 660 (1973); *Bernier v Boston Edison Co,* 380 Mass 372; 403 NE2d 391 (1980); *Gerberich v Southern California Edison Co,* 5 Cal 2d 46; 53 P2d 948 (1935); *Bourget, supra.*[5]

As in *Scheel,* we are persuaded that the plaintiff should not be precluded, as a matter of law, from presenting her case to the jury. The question whether a duty exists, and the question whether the cause (here, the placement of the poles) was so significant and important to be regarded as a proximate cause of the plaintiff's loss, depends "in part on foreseeability—whether it is foreseeable that the actor's conduct may create a risk of harm

[5] At least one other court adhered to the general rule advanced by the defendant, but concluded that the question whether the placement of the pole constituted an obstruction dangerous to motorists was a question for the jury. *Memphis Light, Gas & Water Division v Goss,* 494 SW2d 766 (Tenn, 1973). However, we agree with the analysis in *Scheel* to the effect that the "proximity of the pole to the highway" should only be one factor in determining reasonable conduct under the circumstances.

to the victim, and whether the result of that conduct and intervening causes were foreseeable." *Moning, supra,* p 439.

The Court of Appeals said that "the probability that a vehicle will careen involuntarily off the traveled surface of the road, striking a particular pole with such force as to endager [sic] its occupants, is relatively slight." *McMillan, supra,* p 636. However, other courts have reached conflicting conclusions regarding the foreseeability of such an occurrence. Compare *Lively,*[6] *supra; Simpson, supra; Oram, supra; Hyde v Co of Rensselaer,* 73 AD2d 1021; 424 NYS2d 755 (1980), aff'd 51 NY2d 927 (1980) with *Scheel, supra; Frangis v Duquesne Light Co,* 232 Pa Super 420, 422-423; 335 A2d 796 (1975); *Gutelle v City of New York,* 80 AD2d 538; 435 NYS2d 608 (1981).[7]

After reviewing these decisions, we hold that the

---

[6] We believe that the analysis in *Speigel* is correct because courts must place limits on foreseeability. Clearly, it is foreseeable in the practical sense that planes and cars will crash or encounter emergencies. However, only acts which are likely to result in injury are compensable. Acts which cause injury but are foreseeable only as remote possibilities, those only slightly probable, are beyond the limit of legal liability. *National Airlines, Inc v Edwards,* 336 So 2d 545 (Fla, 1976). [465 So 2d 1276.]

[7] We also note that injuries due to car collisions are considered foreseeable in products liability actions as incident to the normal use of automobiles. However, this does not mean that the duty arises from foreseeability of risk, but only that a manufacturer must consider the environment in which its product is used. See *Rutherford v Chrysler Motors,* 60 Mich App 392; 231 NW2d 413 (1975).

In the case at bar, plaintiff's complaint briefly mentions that "defendants impliedly warranted the crashworthiness" of the pole. Plaintiff and amicus have attempted to expand this theory through the use of off-the-record information. Although plaintiff asserts that defendant is responsible for the design of their poles, defendant counters that it neither manufactures nor sells poles to the public or governmental entities for a profit. (It does, however, sell electricity at a profit.) We conclude that the record in this case does not contain sufficient information to facilitate meaningful appellate review. Plaintiff's theory may be developed on remand if the facts so warrant.

summary judgment granted as a matter of law by the lower courts should be set aside. When reasonable minds may differ regarding the application of the reasonableness of the risk of harm, the question is best left to the jury. *Moning, supra; Fiser v City of Ann Arbor,* 417 Mich 461; 339 NW2d 413 (1983); Prosser & Keeton, *supra,* p 321.[8]

> In sum, it cannot be said that there was no "obligation of reasonable conduct for the benefit of the plaintiff," or that all reasonable men would agree that defendants' conduct was not "a substantial factor in producing the result" or regarding "the foreseeability of [the] particular risk" or regarding "the reasonableness of the defendants' conduct with respect to it, or the normal character of [Alfono's conduct]" as an intervening cause.
>
> Since reasonable persons can differ regarding the balance of risk and utility (the reasonableness of the risk of harm) and since there is no overriding policy based on social utility of maintaining absolute access to slingshots by children, we reverse and remand for a new trial. [*Moning, supra,* pp 458-459.]

We overrule *Dawson* and *Cramer* because they fail to impose *any* obligation of reasonable conduct for the benefit of occupants of vehicles which leave the traveled portion of the highway. We fail to see

---

[8]If the facts bearing upon other aspects of "proximate cause" (that is, aspects other than causation in fact) are not in dispute and reasonable persons could not differ about the application to those facts of the legal concept of "proximate cause," the court determines that issue. *But if reasonable persons could differ,* either because relevant facts are in dispute *or because application of the legal concept of "proximate cause" to the case at hand is an evaluative determination as to which reasonable persons might differ, the issue of "proximate cause" is submitted to the jury with appropriate instructions on the law.* [Prosser & Keeton, *supra,* p 321. Emphasis supplied.]

an overriding policy which would insulate the defendant in all cases in which a pole is placed outside the traveled portion of the highway.[9] Upon remand, should the defendant seek a motion for summary disposition based upon a lack of genuine issue of material fact, the trial court may consider such factors as the location of the pole, its proximity to the roadway, the configuration of the roadway, whether the utility company had notice of previous accidents at that location, and whether alternative, less dangerous locations for the pole existed. After considering these factors and any other factor which may be probative of the issue, the trial court, upon finding that reasonable minds could differ as to whether the defendant acted negligently in the placement of the pole, should place the issue before the jury to decide. See *Scheel, supra.*

The duty imposed today is not an intolerable burden. In an analogous situation, the Court held a utility company to a reasonable standard in positioning and maintaining its power lines. *Laney v Consumers Power Co,* 418 Mich 180; 341 NW2d 106 (1983). We believe that a similar duty should

[9] As noted by the dissent in *Simpson, supra,* 282 Ala 374-375:

The majority opinion, when stripped, says that from this day forward there can be negligence on the part of one placing a pole in Alabama, if that pole is placed on a shoulder; but there cannot be negligence on the part of one placing a pole in Alabama, if that pole is placed on a median—no matter where.

Medians do not necessarily have curbs, and poles can be located around blind corners within medians. Medians are constructed in many different ways and shapes. Medians will continue to be constructed in new and different ways in the future. The mind can fashion hundreds of future happenings where a pole, carelessly placed in a median, will cause injury and death to the innocent. The majority opinion grants free license to the pole placer within a median but restricts him to the scrutiny of a jury on a shoulder. I fail to see the difference.

be imposed regarding the location of the utility poles.

Our decision today overruling *Dawson* and *Cramer* is to be given limited retroactive effect, that is, it is applicable to this case, all cases pending on appeal where the issue has been preserved for review and where the issue is currently pending in the trial courts.

## III

Plaintiff also claims that she is a third-party beneficiary of a contract between Detroit Edison and the State Highway Commission. See *Clark v Dalman,* 379 Mich 251; 150 NW2d 755 (1967); *Talucci v Archambault,* 20 Mich App 153; 173 NW2d 740 (1969). We first note that this theory was not pled in plaintiff's complaint. Nonetheless, we will review this issue to prevent needless argument on remand.

The contract at issue is actually an application granting Detroit Edison permission to enter onto the right of way and install street lights and underground cables. Plaintiff focuses on the following language from the State Highway Commission's standard printed form:

> [I]f said permit is granted, the above named applicant agrees to do the following:
>
> * * *
>
> 3. Take, provide and maintain all necessary precautions to prevent injury or damage to persons and property *from operations covered by this permit* and use safety devices which are approved by the Michigan Department of State Highways.
>
> * * *
>
> A permit as requested in the foregoing application subject to the conditions to which applicant

thereby agrees is hereby granted for the period commencing 7/14/66 and ending 12/31/66.

Plaintiff concedes that the contracting parties must intend to benefit her in order for her to be entitled to recovery under this theory. See *Talucci, supra;* MCL 600.1405; MSA 27A.1405.

It is clear to us, as it was to the Court of Appeals, that the parties did not intend this plaintiff to benefit from their agreement. By its express terms, the indemnity provision only applies to "operations covered by this permit." The "desired activity" only involved installation of the street lights and cables. Furthermore, the expressed term of the agreement ended almost ten years before the accident. The plaintiff attempts to focus on general language, while ignoring the express terms and length of the agreement. We therefore affirm that portion of the Court of Appeals decision dealing with this issue.

Affirmed in part, reversed in part, and remanded for a new trial.

Williams, C.J., and Levin, Brickley, and Boyle, JJ., concurred with Cavanagh, J.

Riley, J. (*dissenting*). The issue presented is not whether a utility company owes *no general duty of reasonable care,* regarding the placement and design of utility poles, to occupants of vehicles which leave the traveled portion of a highway. The Court of Appeals, in affirming the rulings of the trial courts, did not premise its decision upon such a conclusion. The Court did not reason, by combining the questions of duty and proximate cause, that a utility company may not incur liability for the negligent placement and design of utility poles because the occupants of vehicles who may sustain

injuries as a result are "unforeseeable plaintiffs."[1] The Court did not "decline[ ] to impose any obligation on the defendant under the circumstances."[2] It expressly acknowledged that a utility company must "conform to the legal standard of reasonable conduct in the light of the apparent risk"[3] (general standard of care). The Court's decision was reached, rather, by determining that, in the light of the undisputed relevant facts presented, the placement and design of the utility pole in question did not create an unreasonable risk of harm to highway travelers (specific standard of care). In reaching that decision, the Court applied a judicially established rule concerning the specific standard to which the reasonable utility company must conform in the placement of utility poles and concluded that defendant, Detroit Edison, could not, in the present case, be found to have derogated from its duty to exercise ordinary care under the circumstances. Having so concluded, the issue of causation was not implicated and, therefore, was not addressed.

The Court of Appeals analysis relied upon this Court's recent decision in *Moning v Alfono*,[4] its earlier decisions in *Cramer v Detroit Edison*[5] and *Dawson v Postal Telegraph-Cable Co*,[6] and several decisions of the courts of other jurisdictions. Because I am persuaded that the reasoning employed by the Court of Appeals is sound, I cannot join the majority opinion for reversal.

[1] Cf. *Palsgraf v Long Island R Co*, 248 NY 339; 162 NE 99; 59 ALR 1258 (1928). See, generally, Prosser & Keeton, Torts (5th ed), § 43, pp 284-289.

[2] *Ante,* p 52.

[3] *McMillan v State Highway Comm,* 130 Mich App 630, 635; 344 NW2d 26 (1983).

[4] 400 Mich 425; 254 NW2d 759 (1977).

[5] 296 Mich 662; 296 NW 831 (1941).

[6] 265 Mich 139; 251 NW 352 (1933).

I

I disagree that the essential question presented is whether the defendant "owes any obligation to avoid negligent conduct,"[7] under the facts of the present case. In the famous *Palsgraf* case,[8] the New York Court of Appeals held that the general duty of reasonable care only arises with respect to foreseeable plaintiffs and consequences.[9] That theory was not relied upon by the Court of Appeals in the instant case. Nevertheless, to the extent that the defendant relies upon such a theory to, in effect, assert that it is relieved of the duty to conform to the general standard of care—reasonable care under the circumstances—I am in agreement with the majority, and, thus, would reject that assertion.

I am convinced, however, that neither the Court of Appeals in the instant case, this Court in *Cramer* and *Dawson, supra,* nor the decisions of the courts of other jurisdictions involving similar cases, have relied upon the *Palsgraf*—unforeseeable plaintiff—analysis. I am persuaded that the general rule applied in those cases relates to the specific standard of care—the particular conduct required of a utility company to conform to the general standard of reasonable care. I would suggest that the majority opinion appears to have confused the general standard of care with the specific standard of care in this regard. Inaccurately framing the issue as whether a utility company has any legal obligation whatsoever to use reasonable care in the placement and maintenance of utility poles tends to obscure the nature, and difficulty, of the essential question presented.

[7] *Ante,* p 51.

[8] *Palsgraf,* n 1 *supra.*

[9] *Id.* See, generally, Prosser & Keeton, n 1 *supra.*

**A**

The Court of Appeals did not interpret *Dawson* and *Cramer* as standing for the proposition that a private utility company owes no duty to exercise reasonable care in the placement and design of utility poles. To the contrary, the Court expressly stated that such a legal duty is imposed, and it did not reason that the defendant was, to any extent, relieved of that general duty.[10] The Court stated, quoting from *Moning, supra,* that in negligence cases that duty is always the same, to "conform to the legal standard of reasonable conduct in the light of the apparent risk."[11] The Court discussed the nature of the risk-benefit analysis required in determining the specific standard of care—what specific conduct is required to satisfy the general duty to exercise reasonable care—quoting the following paragraphs from *Moning:*

> Even if a person recognizes that his conduct involves a risk of invading another person's interest, he may nevertheless engage in such conduct unless the risk created by his conduct is unreasonable.
>
> The reasonableness of the risk depends on whether its magnitude is outweighed by its utility. The Restatement provides: "Where an act is one which a reasonable man would recognize as involving a risk of harm to another, the risk is unreasonable and the act is negligent if the risk is of such magnitude as to outweigh what the law regards as the utility of the act or of the particular manner in which it is done." 2 Restatement, [Torts 2d], § 291.
>
> The balancing of the magnitude of the risk and

---

[10] The majority, relying upon the briefs of the parties and of amicus curiae, has inaccurately expressed the basis and analysis of the Court of Appeals decision which is the subject of this appeal.

[11] *McMillan,* n 3 *supra,* 635.

the utility of the actor's conduct requires a consideration by the court and jury of the societal interests involved. The issue of negligence may be removed from jury consideration if the court concludes that overriding considerations of public policy require that a particular view be adopted and applied in all cases. [*Moning, supra,* 449-450.][12]

The Court emphasized that defining the particular standard of conduct is ordinarily a jury question, but stated that, in the present case, public policy militates in favor of uniformity. The Court reasoned:

> Once again, the drawing of this balance is a jury matter unless public policy militates in favor of uniformity. Tort liability has the effect, and to a degree the purpose, of regulating a defendant's future conduct. It is thus beneficial to develop and adhere to standards governing a utility company's duty regarding the placement and design of utility poles. The rule set forth by *Dawson* and *Cramer* accomplishes this by holding that a utility *has acted reasonably in light of the risk of harm if it locates its poles so as not to constitute an obstruction dangerous to anyone properly using the highways.* See also MCL 247.185; MSA 9.265. [Emphasis added.][13]

---

[12] *Id.,* 636.

[13] *Id.,* 637. See MCL 247.186; MSA 9.266, which reflects one of a number of statutory regulations applicable to the erection and maintenance of utility poles. That provision relates specifically to the appropriate location of utility poles and provides:

> In no case shall any poles or other structures be placed above the ground or road grade between the curb or road shoulder lines, or closer than 15 feet from the center line of the roadway; and in no case shall any wires, cables or other fixtures be placed, or be permitted to remain, at less height than 15 feet above any part of the traveled portion of the road.

See also MCL 247.184; MSA 9.264, which requires the specific

Thus, the Court of Appeals viewed the rule set forth in *Dawson* and *Cramer* as relating to the specific standard of care. Applying that standard to the undisputed facts of the present case the Court concluded that the defendant could not be found to have created an unreasonable risk by virtue of the location and design of the utility pole in question.

### B

I agree with the Court of Appeals interpretation of *Dawson* and *Cramer*. The general rule set forth and applied in those cases related to the specific standard of care, not the general issue of duty. I agree that in each of those cases the Court went further to address the element of proximate causation. I am persuaded, however, that the Court's decision in each of those cases rested independently upon its determination and application of the particular standard of care.[14]

The general rule applied in each of those cases, as it relates to the specific standard of care, may

---

approval of county and state authorities for, inter alia, the placement of utility poles in or near a public highway.

[14] The *Cramer* Court concluded:

> The defendant was not guilty of actionable negligence. The ornamental light pole was back a short distance [about five feet] from the curb at the east end of the parkway and the [guard] posts set between that pole and the curb of the parkway. So situated the posts were not a menace to travel on the highway, and there was no duty on the part of defendant [particular standard of conduct] to advertise the presence of the posts by warning signs. [*Id.,* 667.]

The *Dawson* Court discussed the statutory authority of a telegraph company to construct and maintain telegraph lines in or near public highways, and the statutory obligation of such a company not to "incommode the public in its use of the roads." *Id.,* 142.

That the *Dawson* Court's holding was based, first, upon a finding that the defendant in that case had not created an unreasonable risk, an obstruction dangerous to highway travelers, is supported by its

be paraphrased as follows. That as a general proposition, a utility company which *lawfully* positions poles in or near a public highway (in accordance with all statutory regulations), has acted reasonably in conformance with its duty to exercise ordinary care, unless the placement of such a pole constitutes an obstruction dangerous to one properly using the highway in the ordinary course of travel.

C

The decisions from other jurisdictions, referred to by the Court of Appeals and discussed in the majority opinion, have applied the general rule articulated in *Dawson* and *Cramer.* As is reflected in the quotations from those decisions set forth in the majority opinion, those cases were not decided on the basis that a utility company "[does] not owe any duty at all to a motorist leaving the traveled portion of the highway." Those decisions apply the general rule expressed in *Dawson* and *Cramer* as it relates to the specific standard of care required to conform to the general legal duty imposed.

A number of the reported decisions concerning the liability of a utility company for injuries sustained by motorists who have suffered the misfortune of colliding with a utility pole have rested upon the determination of issues other than the negligence question.[15] A consistent principle which may be deduced from the cumulative body of those decisions, however, is that, as a general rule, a

discussion of *O'Brien v Union Telephone Co,* 228 Mich 156; 199 NW 671 (1924), and its analysis that *O'Brien* was factually distinguishable. *Dawson, supra,* 144. The statement quoted by the Court from 82 ALR 395 related to the particular standard of conduct required to satisfy the general duty to use reasonable care for purposes of a common-law negligence action. See *id.,* 142.

[15] See Anno: 3 ALR2d 6, §§ 2-3, pp 9-14 and §§ 19-27, pp 56-64.

utility company is not guilty of negligence, with respect to the publicly authorized and specifically approved placement of a utility pole, unless it can be found that under the particular circumstances the placement of that pole created a dangerous obstruction to highway travel in the ordinary course.[16] A careful reading of those decisions, again, reflects that that principle relates to the particular standard of conduct required in such cases and not to the general duty question, or the issue of proximate cause. The application, in those decisions, of that general principle has resulted, consistent with the nature of common-law jurisprudence and the principle of stare decisis, in judicially defining the particular standard of conduct legally required in such cases.[17]

When, under the particular circumstances of a given case, reasonable minds could differ concerning whether the placement of a utility pole has created a dangerous and unreasonable obstruction to highway travel in the ordinary course, the question has been submitted to the jury with appropriate instructions.[18] When reasonable minds could not differ with regard to the application of that specific standard of conduct, however, the courts have properly withheld the issue from jury determination.[19]

[16] See id., §§ 3-18, pp 13-55. See also Restatement Torts, 2d, § 368, which reflects that generally accepted principle. See, generally, Prosser & Keeton, n 1 supra, § 57, pp 388-390.

[17] The particular standard of conduct may be established by judicial decision. See, e.g., Restatement Torts, 2d, § 285. See generally, Prosser & Keeton, n 1 supra, § 35, p 217.

[18] See, e.g., Scheel v Tremblay, 226 Pa Super 45; 312 A2d 45 (1973); Gerberich v Southern California Edison Co, 5 Cal 2d 46; 53 P2d 948 (1935); Stern v Int'l Ry Co, 220 NY 284; 115 NE 759 (1917).

[19] See, e.g., Shapiro v Toyota Motor Co, Ltd, 38 NC App 658; 248 SE2d 868 (1978); Speigel v Southern Bell Telephone & Telegraph Co, 341 So 2d 832 (Fla App, 1977); Oram v New Jersey Bell Telephone Co, 132 NJ Super 491; 334 A2d 343 (1975). See also, e.g., Hyde v Rensselaer Co, 51 NY2d 927; 434 NYS2d 984; 415 NE2d 972 (1980).

Whether submitted to the jury or decided by the court, the particular conduct required of a utility company, in the lawful placement and design of utility poles, seems to have received broad judicial acceptance. To satisfy its general duty to use ordinary care under the circumstances, a utility company which has, with public authorization and specific approval, undertaken to erect utility poles in or near a public highway, must do so without dangerously and unreasonably obstructing highway travel in the ordinary course. While highway travel in the ordinary course may include slight deviations from the traveled portions of highways, it does not include vehicles which, for whatever reason, completely and uncontrollably leave the traveled portions of those highways. Utility companies, and the governmental authorities responsible for highway design and safety generally, do not incur liability for the injuries sustained by the occupants of such vehicles, not because they have no duty to use ordinary care under the circumstances, but because they have not failed to conform to that legal duty and, therefore, have not by affirmative act or omission committed any wrongful act which may be found to have been in derogation of that duty, an essential element of the common-law negligence action.

II

The essential question presented requires determination of the following issues. The first, and broader question presented, is whether this Court should reject the judicially established specific standard of conduct applicable in determining whether a utility company, although in compliance with all statutory regulations, has failed to

exercise due care in the placement and design of a utility pole, and, instead, to require in all cases that the specific standard be submitted for jury definition case by case. Second, and only if the answer to that broader question is no, we must decide whether the evidence presented in the instant case is sufficient to raise a jury question concerning the application of that specific standard.

I am unpersuaded that we should reject the judicially established specific standard of conduct applied by the Court of Appeals in the present case, which was expressed, inter alia, by this Court in *Cramer* and *Dawson*. While it is unquestionable that in the generality of negligence cases the particular standard of conduct is appropriately, and necessarily, left to jury determination on a case-by-case basis,[20] I am persuaded, for the reasons stated in the Court of Appeals opinion, that public policy militates in favor of uniformity concerning the specific standard of conduct to which a utility company must conform for purposes of the common law of negligence, with respect to the placement of utility poles in or near public highways.

I would note that I am cognizant of the danger, generally, that attempting to define the particular standard to be applied in all similar cases may result in a failure to take account of the unusual situations which may present factors which could affect the standard.[21] I would emphasize, however, that the particular standard here in question is not an absolute and inflexible rule which precludes a finding of negligence in all cases in which a utility pole is located outside of the traveled por-

[20] See Prosser & Keeton, n 1 *supra*, § 37, pp 237-238.
[21] See *id.*, § 35, pp 217-219.

tion of the highway.[22] Perhaps most importantly, I
am persuaded that the judicially established par-
ticular standard here at issue, as applied by the
Court of Appeals and generally accepted by the
courts of other jurisdictions, accurately reflects the
obligation imposed by the law of negligence: ordi-
nary care under the circumstances. Whether a
higher standard of care than that which is im-
posed by the common law should be imposed upon
utility companies and the governmental authori-
ties with which they share that obligation is not at
issue. Likewise, whether the statutory regulations
currently applicable to the placement and design
of utility poles should be amended or repealed and
replaced to better serve the public interest in
highway safety is also beyond the scope of this
case.[23]

With regard to the second issue, I am also in
agreement with the Court of Appeals conclusion
concerning the application of the particular stan-
dard of conduct to the undisputed factual circum-
stances of the present case. Reasonable minds
could not differ that the placement and design of

[22] As noted by the Court in *Scheel,* n 18 *supra,* and reflected in the
quotation from that decision set forth in the majority opinion, liabil-
ity would not be limited to "those situations in which the pole is
located in the roadway itself, but may be imposed where the place-
ment of a pole close to the edge of a highway constitutes . . . [an]
unreasonable risk of harm to users of the highway." *Ante,* p 60,
quoting *Scheel, supra,* 47-49. The particular standard of conduct
requires utility poles to be "so located as to avoid any unreasonable
danger to travelers on the highway." *Id.* I would also note that
highway travel in the ordinary course may include minor deviations
from the traveled portion proper of the highway, as opposed to
vehicles uncontrollably and entirely leaving it.

[23] Through the extensive off-the-record evidence referred to in the
majority opinion (*ante,* p 62, n 7), plaintiff and amicus curiae seem
to assert that currently applicable statutory regulations regarding the
appropriate placement and design of utility poles, fail to adequately
further highway safety. To the extent that that is a legislative
matter, it is, of course, beyond the scope of our decision in this case.
See n 13.

the utility pole in question did not create an obstruction dangerous to highway travelers in the ordinary course, and, therefore, that defendant did not breach its legally imposed duty to exercise ordinary care under the circumstances. The undisputed facts and circumstances, and the evidence presented in support of plaintiffs' allegations viewed in the light most favorable to plaintiffs, are insufficient to raise a jury question concerning whether the placement and design of the utility pole in question created an unreasonable risk to the occupants of vehicles in the ordinary course of highway travel.

Liability could not be imposed upon defendant in the present case on the basis of plaintiffs' asserted negligence theory.[24] The general societal interest underlying that theory—shifting an innocent tort victim's loss to the tortfeasor whose *wrongful* conduct is responsible therefor—is inapplicable.

Therefore, I would affirm the decision of the Court of Appeals.

ARCHER, J., took no part in the decision of this case.

---

[24] To the extent that plaintiffs' implied warranty of crashworthiness theory is asserted independently of their negligence claim as a theory of products liability, I would expressly reject it. The Detroit Edison Company is no more a proper party for such a claim than is the State Highway Commission. Neither is a manufacturer, wholesaler, or retailer of utility poles. That defendant sells electricity is, of course, irrelevant in a products liability action concerning utility poles.